# Pittsburgh et al., Appellants, v. Pennsylvania Public Utility Commission

230

Argued April 25, 1945. Before BALDRIGE, P. J., RHODES, HIRT, DITHRICH, ROSS and ARNOLD, JJ. (RENO, J., absent).

*Anne X. Alpern,* City Solicitor, with her *Leon Wald,* Assistant City Solicitor, for appellants, Nos. 93 and 94.

*Samuel Graff Miller,* with him *James H. Duff,* Attorney General, and *Harold A. Scragg,* for Pennsylvania Public Utility Commission, appellee.

*Wm. A. Dougherty,* with him *James B. Sayers, G. Kirby Herrington, James L. White* and *C. W. Cooper,* for intervening appellee, Peoples Natural Gas Company.

OPINION BY HIRT, J., November 20, 1945:

The history of this proceeding, beginning with the original inquiry of the commission in 1937 appears in our opinions, disposing of two former appeals of The Peoples Natural Gas Company from orders of the commission, reported in 141 Pa. Superior Ct. 5, 14 A. 2d 133 and 153 Pa. Superior Ct. 475, 34 A. 2d 375.

The subject of the second appeal was an order of the commission made on December 2, 1942, based on a finding of $20,000,000 as the fair value of the company's property, with an addition of $1,566,085 for working capital. The commission found that the increased rates of the company under its Tariff No. 19 (which had become effective July 1, 1940) were excessive and ordered substantial refunds to consumers for the years 1939 through 1941. By stipulation, the order of the commis-

sion was related to values of the company's property in existence on December 31, 1938. On appeal by the company, questioning the order as confiscatory, we remanded the record for further proceedings. No additional testimony was taken. Instead, the commission accepted the company's records of new property added to the system, after 1938. It adhered to its findings of all of the indicia of value made in the prior proceeding, and, in arriving at revised reproduction and original costs, it added the net cost of the new property incorporated into the system, to its former cost-findings. The result was a finding of $44,064,303, as reproduction cost, depreciated, and $30,589,959 as depreciated original cost of company property in existence on December 31, 1943. Original costs were not trended. The commission, in the order now before us, adopted $37,333,915 as the fair value of the property, which with an addition for working capital resulted in an approved rate base of $38,900,000. It allowed a return of 6½% on this base. In its order the commission referred to necessary specific reductions in the domestic, commercial and industrial rate schedules of the company's Tariff No. 19 and ordered the filing of a new tariff reflecting these reductions. In addition, it directed the company to make reparations to consumers (served during 1942 and 1943 under Tariff No. 19) by repayment to them of a total of $500,000. The reparations have been made and a new tariff, No. 20, filed by the company to comply with the order has reduced the cost of gas to all consumers, as ordered by the commission. The rates of the new tariff, however, are higher than those in effect prior to July 1, 1940, under Tariff No. 18.

All of the proceedings were instituted by the commission itself. Consolidated into one inquiry they questioned the propriety of all of the rates of the company under its successive tariffs. When, during the initial proceeding, the company filed its Tariff No. 19, the city immediately entered its protest against the increased

rates and on its petition was allowed to intervene. Since October 24, 1939, the city has taken an active part in all of the proceedings before the commission. The consolidated proceeding resolved itself into a single contested rate case in which the city was an intervening party.

Two appeals are before us, both attacking the final order on identical grounds; in effect that the finding of fair value is not supported by the evidence; that the allowed earnings are excessive; and that the present rates of Tariff No. 20 are unreasonable. The city, both as a municipality, and consumer-intervenor had the status of a complainant in the consolidated proceeding. Public Utility Code of May 28, 1937, P. L. 1053, §1001, 66 PS 1391. The final order of the commission, based upon more than 4,000 pages of testimony developed by the city, the company and the commission, was not administrative merely (Cf. *Pittsburgh v. Penna. P. U. C.*, 145 Pa. Superior Ct. 580, 20 A. 2d 869) but resulted from the exercise of its quasi-judicial functions. *Cage v. P. S. C.*, 125 Pa. Superior Ct. 330, 189 A. 896. The city had an interest in the subject matter and was affected by the final order. As a consumer-complainant, at least, it has the present right of appeal. §1101 of the Code, 66 PS 1431. Mrs. Katherine Cassidy, a small consumer, never heretofore a party to the proceeding, clearly, has no standing as an appellant. Her appeal will be quashed.

The city does not have a vested interest in the utility as consumer or otherwise; it and its citizens are entitled to the benefit of the public service supplied by the company but only at such rates as are fixed by the legislature through the commission, its administrative agent. *City of Scranton v. The Pub. Ser. Com.*, 80 Pa. Superior Ct. 549. Rate making does not involve the consent, either of a municipality (*Suburban Water Co. v. Oakmont Boro.*, 268 Pa. 243, 110 A. 778) nor of a consumer. The utility has not questioned the order as confiscatory, and since no constitutional right of the city has been

invaded, this appeal does not present the exceptional case in which we may make independent findings of fair value and reasonable rate of return. *Ohio Valley Co. v. Ben Avon Borough*, 253 U. S. 287; *Solar Electric Co. v. P. U. C.*, 137 Pa. Superior Ct. 325, 9 A. 2d 447. And we may set aside the order of the commission and remand the record but only "for error of law or lack of evidence to support the finding, determination, or order of the commission . . .": §1107 of the Code, 66 PS 1437.

Much of the city's criticism of the conclusions and order of the commission may be attributed to its reluctance to accept the applicable law as laid down by this court. It is unimportant that another gas company in the Pittsburgh area may be serving consumers at rates lower than those approved by the commission in the present case. What a utility may be entitled to earn is a question to be decided in each particular case and is not governed by an over-all-end judgment of what companies of the same class ought to charge the consuming public for their product. As we have said many times, in determining what the company may charge its customers we must accept *fair value* of its property used and useful as the basis of rate making under the present Public Utility Code which in §311 of Art. III, 66 PS 1151, continued the same provision of the prior Public Service Company Law of July 26, 1913, P. L. 1374. The city concedes this, but would have us apply methods of measuring value variously adopted by other courts, some of which reflect social viewpoint rather than an unbiased balancing of the interests of investors and consumers. Specifically, the city stresses the decision in *Federal Power Commission et al. v. Hope Natural Gas Co.*, 320 U. S. 591, 64 S. Ct. 281, a case which has its point of contact with the present proceeding. It should be enough to say that the decision was concerned with a construction of the Federal Natural Gas Act of June 21, 1938, 52 Stat. 821, 15 U. S. C. A. §§717-717W, which directed the Federal Power Commission to fix "just and

reasonable" rates without specifying standards for determining them. Any construction of that Act of Congress has no application to the language of our Public Utility Law or its binding effect upon us. We have adhered to the view that when the legislature wrote *fair value* into the Public Utility Law it adopted the then settled construction of the appellate courts of this State and intended the same meaning of *fair value* as under the prior Public Service Act. Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS 552. Decisions of the Supreme Court of the United States, in other cases, accepting standards other than *fair value* in the sense of our statute, do not change the present law of this Commonwealth; that remains a question for the legislature, so long as our views are unmodified by a court of higher authority.

*Solar Electric Co. v. P. U. C.*, supra, (137 Pa. Superior Ct. 325, 9 A. 2d 447) is the present rate-making law of this State. The traditional elements reflecting fair value (*Smyth v. Ames,* 169 U. S. 446, 18 S. Ct. 418), and others referred to in the *Solar* case, are not of the same weight in every proceeding. If they were, rate making might be reduced to the simple process of applying a formula—a highly desirable but unattainable end. It was our intention in the prior appeal (153 Pa. Superior Ct. 475.) not to modify the general principles of the *Solar* case, but to apply the law to the facts of this particular proceeding. The opinion in that appeal, except as modified here in one particular, is the law of the case and is binding upon all of us.

Prior to 1920 the company had drilled wells and had made other additions to its property at a cost of $7,558,-226 but, on its books, had charged these additions to expense of operation. The commission refused to consider these "expensed items" as additions to property affecting the rate base. In the last appeal we approved these items, depreciated to $4,157,024, as additions to capital investment entering into a finding of fair value. We have

reconsidered the question and are now convinced that the commission was right and that we were wrong. The commission's finding of depreciated original cost included this total of $4,157,024 charged to operating expense and at least $4,000,000 of that amount was included in depreciated reproduction cost. Elimination of these items from cost findings should reduce the rate base with corresponding benefit to consumers by a downward revision of its present tariff schedules. For this we accept full responsibility. The company had the choice of adding its earnings, over and above actual payment to security holders, to surplus available for future dividends, or to depreciation reserve. Plowing in of depreciation reserve by investment in new property may be considered as additions in computing reproduction and original costs, thus entering into the rate base. Concurring opinion of President Judge KELLER in the last appeal, 153 Pa. Superior Ct. 514, et seq. But it is our reconsidered conclusion that where, as here, a part of the earnings, according to the books of the company, were disbursed as operating expense, the company, having recouped the entire cost from the rate payers, over and above adequate profits paid to security holders, and having enjoyed the benefits of treating the cost as operating expense, cannot later be permitted to say that these expenditures are capital investment on which consumers must pay an additional return. Our conclusion to the contrary in the last appeal was fortified to some extent by the reasoning of Judge PARKER in the *Hope* case in which about $17,000,000 of "expensed property" were involved. The Supreme Court of the United States, reversing in that case, did not find it necessary to determine the status of that property in relation to the rate base and that question was not decided. But even if it had been, it would not have been binding on us for the reasons above stated. Our change of view rests upon equitable considerations induced by a reconsideration of the commission's argument in the last appeal and not

upon the reversal in the *Hope* case. It is probable that, under accounting systems since 1920, the company has not charged any additional capital outlay to expense. If it has, these items also should be deducted from original and reproduction costs. The proceeding will be referred back to the commission to determine the effect of elimination of "expensed property", upon the rate base.

The record must be remanded for another reason. It is no objection to the final order that it was prompted by negotiations between the company and the commission looking toward a termination of the proceedings. Since the inquiries were all initiated by the commission the procedure in terminating them was largely within its control. But the city was not a party to the settlement discussions and the final order must rest upon findings of the commission from the testimony. The commission did make and file its findings and it is for us "on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence": §1005 of the Code, 66 PS 1395. There is no complaint as to the finding of depreciated original cost of the company's property as found by the commission except as to the inclusion of the expensed items. But the rate base cannot be determined solely from that finding because it is conceded, as it must be, that there have been changes in price levels and no adjustments were made by the commission to reflect price trends disclosing fair value as of the applicable date. *Peoples Nat. Gas Co. v. Pa. P. U. C.*, supra (153 Pa. Superior Ct. 475, 484). On the other hand, the rate base cannot rest upon the equivocal finding that the reproduction cost of the company's property was $72,236,-739. The finding was made from the testimony of the witness Rhodes, the company's expert, alone, and full acceptance of his testimony by the commission in its 1942 order can be explained only by the assumption that it did not consider the finding important and intended

to ignore it. The decree nisi at that stage of the proceeding disclosed lack of confidence in the judgment of that witness as an estimator of reproduction costs. And the commission's argument, in the last appeal to us, severely criticized his methods as partisan. The commission referred to "the egregious estimates of witness Rhodes" and asserted that he "was dedicated to theoretical estimates as against actual costs." In our last opinion we reminded the commission of the importance of reproduction cost as an essential element in determining fair value for rate purposes, and suggested that the commission determine the weight of this evidence which it had both accepted and condemned. In the light of our direction, it was the duty of the commission to appraise the probative force of the testimony of reproduction cost and make a new finding. This it did not do but reaffirmed its prior finding, and it is impossible from the order of the commission now before us to determine the process by which it determined the rate base. In a subsequent order, dismissing the city's petition to re-open the proceeding, it is stated "that the commission determinations reached in the light of the criticisms [of the company's evidence of reproduction cost] were to a large extent carried into effect in the final commission order." The place for determining the weight of testimony is in the findings of fact. We agree with the commission that the testimony is insufficient to support the finding of reproduction cost which it made. The difficulties inherent in appraising reproduction cost testimony does not relieve the commission from determining its probative weight, bearing in mind that "the burden of proof to show that the rate involved is just and reasonable" is on the public utility. §312 of the Code, 66 PS 1152. It will be for the commission to reconsider its finding of reproduction cost and, in its discretion, to trend original cost translating it into value as of the date of the determination of the rate base.

In our former opinion we said that a rate of return of 6½% was not unreasonably low; we are not now in position to say that it is unreasonably high as applied to a utility whose sole product is natural gas. The rate should not be reduced merely to compensate for a relatively high finding of fair value.

The rate payers were not adversely affected in this proceeding, prior to July 1, 1940. That the proceeding must again be referred back to the commission is unfortunate, but that is not so important as attaining a reasonable final result. The proceeding should be terminated as soon as practicable and we see no compelling reason for determining values subsequent to the date of the last order of the commission. What further hearings must be held and their scope, will be for the commission to decide.

The appeal of Mrs. Katherine Cassidy, at No. 94, is quashed.

In the appeal of the City of Pittsburgh at No. 93, the order is reversed and the record is remitted for further proceedings.

———

DISSENTING OPINION BY RHODES, J.:

To remand this case to the Public Utility Commission serves no purpose, and merely delays a proceeding which should have been terminated long ago. The order of the commission, filed December 7, 1942, which we reversed in *Peoples Natural Gas Company v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 475, 34 A. 2d 375, was substantially and reasonably correct both on the facts and on the law. But the commission, in its order of February 16, 1944, clearly attempted to apply the directives—now conceded by the majority to have been erroneous in part—of this court set forth in its opinion reversing the commission's order of December 7, 1942. The commission, in making its first order, as stated in the order of February 16, 1944, avoided "the

acceptance of original cost, prudent investment, repro-
duction cost, or other single element, as the rate base,"
but considered "every element and [gave] it proper
weight in the ultimate finding of fair value." The last
order of the commission was the result of the application
of principles which it realized, and we now acknowledge,
were incorrect.

The commission, in making its order of December 7,
1942, was of the opinion that the reproduction cost fig-
ures in the record presented by the utility were entirely
unreliable and worthless. See order nisi, March 4, 1942
(3531a) ; final order, December 7, 1942 (3721a). Upon
the case being remitted under our decision of November
10, 1943 (153 Pa. Superior Ct. 475, 34 A. 2d 375), the
commission thereupon accepted such estimates, which it
had thus characterized, and based its order of February
16, 1944, thereon. Counsel for the commission confirmed
this fact at the argument of the present appeal at Pitts-
burgh on April 25, 1945. But the majority opinion still
leaves the commission with no alternative but to repeat
the error. It is immaterial that the utility has not ques-
tioned the present order as confiscatory; the order is
a nullity, and the proceeding is before us in its entirety
for an independent judicial.determination of findings of
fact establishing value. Accordingly, it is my view, in
order that no more confusion may be created in the
utility law especially as it relates to valuation, we should
make our own determination of fair value and express
our independent judgment as to both the law and the
facts.[1] See *Solar Electric Co. v. Pennsylvania Public Util-*

---

[1] "The argument for insisting upon the necessity for an inde-
pendent judicial determination of findings of fact establishing values
can be neatly stated in the form of a syllogism. Rate-making is an
appropriate exercise of the legislative power provided that the rates
are not confiscatory. Whether or not they are confiscatory depends
upon the correctness of the finding as to value. The facts relating to
value must thus be independently found by a court in order for a
court to conclude that a particular legislative act was within the
legislative power; otherwise the legislature would itself be finding

*ity Commission et al.,* 137 Pa. Superior Ct. 325, 353, 354, 9 A. 2d 447. The utility had claimed that confiscation of its property would result from the enforcement of the commission's order of December 7, 1942. Naturally it does not make such a claim as to the order of February 16, 1944,[2] which is invalid due to our manifest errors with which the commission sought to comply against its own judgment. But for such an erroneous view of the law given by this court, the commission would not have reached the conclusion that it did upon this record.

The majority opinion now reverses *Peoples Natural Gas Company v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 475, 34 A. 2d 375, as to expensed items in the determination of the rate base. To this extent I concur. My reasons are given in my dissent in 153 Pa. Superior Ct. 475, 503, 34 A. 2d 375, 391. In 153 Pa. Superior Ct. 475, 34 A. 2d 375, in reversing the commission for the exclusion of expensed items, this

---

the facts upon which the very exercise of legislative power depends. It was thus not enough for a court to satisfy itself that the trier of the facts, the administrative, had followed the correct rules as to valuation. Instead, the actual determination of value had to be made by the court": The Administrative Process, James M. Landis, pp. 127, 128. See *Ohio Valley Water Co. v. Ben Avon Borough,* 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908.

[2] Utility's average annual earnings for 10 years
preceding rate increase (4173a, 4191a) .... $1,010,206.60
Utility's own estimate of annual earnings in
justification of increased rates (2763a) .... 708,295.04
Annual earnings allowed by commission's origi-
nal order of December 7, 1942 (3721a) ..... 1,401,796.00
Annual earnings allowed by commission's order
of February 16, 1944, after case remanded
by this court (4364a) .................... 2,528,500.00

The commission originally found that the Standard Oil Company was the sole owner of the utility, and that the total invested capital was $12,744,126. (3563a) The commission did not consider invested capital as being a direct factor in fair value determination, but it did point out that such capital performed a very important function by showing at what point a fair value finding would work a hardship on the utility's owners.

court relied upon *Hope Natural Gas Company v. Federal Power Commission,* 134 F. 2d 287, later reversed in *Federal Power Commission et al. v. Hope Natural Gas Co.,* 320 U. S. 591, 64 S. Ct. 281, 88 L. Ed. 333, and indicated that as long as present fair value is the base capital investment items must be included although charged to expense. In that opinion this court also said (p. 486) : "That appellant owns the property and is using it in the service is unquestioned. And, so long as present fair value is the test, it makes no difference whether appellant bought it, received it as a gift, or won it in a lottery." It is significant that the majority opinion now modifies this concept of fair value.

In the majority opinion the principle of "the law of the case" is invoked but not followed. It corrects at least one of the errors in the opinion in the *Peoples* case, 153 Pa. Superior Ct. 475, 34 A. 2d 375. I am at a loss to understand upon what principle of law it can be supposed that this court has no power in this case now before us to correct other more material errors. The principle of "the law of the case" has little, if any, application in public utility rate cases. I believe we are free to make a complete, instead of a partial, correction of errors made in our former decision. See *Reamer's Estate,* 331 Pa. 117, 122, 123, 200 A. 35 ; 3 Am. Jur. p. 546, § 990.

The majority opinion goes on to say : "Solar Electric Co. v. P.U.C., supra (137 Pa. Superior Ct. 325, 9 A. 2d 447), is the present rate-making law of this State. . . . It was our intention in the prior appeal (153 Pa. Superior Ct. 475) not to modify the general principles of the Solar case." In view of such statements in the majority opinion, it is impossible to ascertain the applicable law of this state in determining the fair value of the property of a utility.

I do not agree that *Solar Electric Co. v. Pennsylvania Public Utility Commission et al.,* 137 Pa. Superior Ct. 325, 9 A. 2d 447, is the present rate-making law of this

state, or the applicable law in determining the fair value of the property of a utility. I think the *Solar Electric Company* case, inter alia, has been overruled.

In the *Peoples* case, 153 Pa. Superior Ct. 475, 34 A. 2d 375, all of the elements upon which the commission made its finding of fair value (exclusive of working capital) were eliminated except reproduction cost new less depreciation. The commission had considered reproduction cost depreciated, original cost depreciated, book value, and invested capital for a limited purpose (see footnote 2). Under that decision of this court it is obvious that the commission could not make a finding of fair value based on any elements other than reproduction cost depreciated, or the equivalent—original cost trended. It can readily be seen that the commission is bound to a formula which requires adherence to one element, to wit, reproduction cost new less depreciation. I think it may be safely asserted that this is in conflict with our statutory law and the pronouncements of this court. In that opinion it is said (p. 489) : "Since the legislature put fair value into our law, together with what in 1937, when the law was passed, was universally understood to have been the elements of fair value, that body alone can take it out and substitute something else in its place." Reliance was placed upon *McCardle v. Indianapolis Water Co.,* 272 U. S. 400, 47 S. Ct. 144, 71 L. Ed. 316, as establishing reproduction cost as the dominant basis of value. The *McCardle* case was decided in 1926. In 1933, Mr. Chief Justice HUGHES wrote the opinion in *Los Angeles Gas & Electric Corp. v. Railroad Commission of California,* 289 U. S. 287, 53 S. Ct. 637, 77 L. Ed. 1180. There is no reasonable ground to intimate or assert that the legislature in 1937 meant fair value to be as indicated in the *McCardle* case in 1926 rather than as understood in the *Los Angeles* case in 1933. Our present situation is a glaring example of the failure to realistically approach the subject of valuation. To attempt to control the commission's judgment on a

matter of valuation by insisting upon a particular formula is only conducive to chaos in the field of rate-making. Valuation, under *Smyth v. Ames,* 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819, may be cumbersome and permit consideration of a polyglot of elements, but it at least has afforded an opportunity for a commission to utilize its judgment without undue restraint. Mr. Justice HARLAN, in *Smyth v. Ames,* 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819, 849, said: "And, in order to ascertain that value [fair value], the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property."

In *Solar Electric Co. v. Pennsylvania Public Utility Commission et al.,* supra, 137 Pa. Superior Ct. 325, 347, 9 A. 2d 447, 461, we said: "The Supreme Court of Pennsylvania and this court have consistently followed the rule of Smyth v. Ames in the valuation of the property of public utilities." See *Erie City et al. v. Public Service Commission,* 278 Pa. 512, 521, 123 A. 471; *Bangor Water Co. v. Public Service Commission,* 82 Pa. Superior Ct. 48. In the *Solar Electric Company* case, in making our own determination of fair value, we said that our "independent judgment" was exercised "after considering the character of respondent's plant, the book cost of invested capital as shown on the company's books, the reproduction cost new and the accrued depreciation."

In view of these pronouncements by our court, determination of fair value, in the manner prescribed in the *Peoples* case, 153 Pa. Superior Ct. 475, 34 A. 2d 375, is diametrically contrary to the legal principles recognized as applicable up to that time.

The elements upon which a finding of fair value could be made were enumerated in section 20, art. 5, of the Public Service Company Law of 1913, P. L. 1374, which reads as follows: "In ascertaining and determining such fair value, the commission may determine every fact, matter, or thing which, in its judgment, does or may have any bearing on such value; and may take into consideration, among other things, the original cost of construction, particularly with reference to the amount expended in the existing and useful permanent improvements; with such consideration for the amount in market value of its bonds and stocks, the probable earning capacity of the property under particular rates prescribed by statute or ordinance, or other municipal contract, or fixed or proposed by the commission, and for the items of expenditures for obsolete equipment and construction, as the circumstances and the historical development of the enterprise may warrant; the reproduction costs of the property, based upon the fair average price of materials, property, and labor, and the developmental and going concern value of such public service company; and these, and any other elements of value, shall be given such weight by the commission as may be just and right in each case.

"(b) The Commission shall also have power to make revaluations of the property of any public service company, from time to time, and to ascertain and determine the value of new construction, extensions, and additions to the same."

The Act of 1937 did not enumerate the elements to be considered by the commission in fixing fair value of a utility's property. Section 311, art. 3, of the Act of May 28, 1937, P. L. 1053, 66 PS § 1151, reads as follows: "The commission may, after reasonable notice and hearing, ascertain and fix the fair value of the whole or any part of the property of any public utility, in so far as the same is material to the exercise of the jurisdiction of the commission, and may make revaluations from time to

time and ascertain the fair value of all new construction, extensions, and additions to the property of any public utility. When any public utility furnishes more than one of the different types of utility service enumerated in paragraph seventeen of section two of this act, the commission shall segregate the property used and useful in furnishing each type of such service, and shall not consider the property of such public utility as a unit in determining the value of the property of such public utility for the purpose of fixing rates."

The term "fair value" in section 311, 66 PS § 1151, and the term "just and reasonable rates" in section 309, 66 PS § 1149, were apparently left undefined by the legislature for a purpose. At most, reproduction cost is to be considered; it is not the dominant basis of fair value. As the legislature did not define or limit such terms, it could very properly be assumed that the concept of that which is "fair value" and the concept of that which is "just and reasonable" might change from time to time, although this court has taken the position that the Act of 1937, in section 311, art. 3, 66 PS § 1151, continued the provisions of section 20, art. 5, of the Act of 1913.

I think the commission originally gave as much consideration to the reproduction cost element as was reasonably warranted under the conditions presented in this case, and we had no substantial ground for reversal. The burden of proof in a rate case is on the utility. "What the commission may see fit to ask for is one thing, but what a utility must produce in order to sustain its burden of proof in a rate case is a different matter": *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 141 Pa. Superior Ct. 5, 15, 14 A. 2d 133, 137. The commission made a finding of reproduction cost, but it pointed out that this finding was on unreliable evidence. The weight therefore to be given to such finding was to be determined by the facts in this case. The basis of calculation of fair value, in the order of

February 16, 1944, as admitted by commission's counsel at the argument at Pittsburgh, is the discredited testimony as to reproduction cost. It is true that the United States Supreme Court, in *McCardle v. Indianapolis Water Co.,* supra, 272 U. S. 400, 47 S. Ct. 144, 71 L. Ed. 316 (1926), places great emphasis on reproduction cost. It reiterated this doctrine in *St. Louis & O'Fallon Railway Co. v. United States,* 279 U. S. 461, 49 S. Ct. 384, 73 L. Ed. 798 (1929), but prior to the enactment by the Pennsylvania legislature of the Public Utility Law of 1937 there was a considerable change in attitude on the part of the United States Supreme Court as to those theories which we have adopted without any consideration of subsequent modification by that court. In 1933, in *Los Angeles Gas & Electric Corp. v. Railroad Commission of California,* supra, 289 U. S. 287, 53 S. Ct. 637, 77 L. Ed. 1180, 1193, Mr. Chief Justice HUGHES said: "The actual cost of the property—the investment the owners have made—is a relevant fact. Smyth v. Ames, 169 U. S. 466, 547, 42 L. Ed. 819, 849, 18 S. Ct. 418." In that case the court found that while the California commission had based its rates principally upon investment costs, it had done so largely because evidence as to reproduction cost was unreliable; and that on the whole the California commission had given as much consideration to the reproduction cost factor as was warranted under the circumstances. Mr. Chief Justice HUGHES, in his opinion, also pointed out that both actual cost and reproduction cost were relevant facts, but that neither was the final and exclusive test; and that the weight to be given to either of them was to be determined by the facts of the particular case.

In 1942, in *Federal Power Commission v. Natural Gas Pipeline Co.,* 315 U. S. 575, 62 S. Ct. 736, 86 L. Ed. 1037, 1049, 1050, the United States Supreme Court went on to say: "The Constitution does not bind rate-making bodies to the service of any single formula or combination of formulas. Agencies to whom this legislative

power has been delegated are free, within the ambit of their statutory authority, to make the pragmatic adjustments which may be called for by particular circumstances. Once a fair hearing has been given, proper findings made and other statutory requirements satisfied, the courts cannot intervene in the absence of a clear showing that the limits of due process have been overstepped."

*Federal Power Commission v. Hope Natural Gas Co.,* 320 U. S. 591, 64 S. Ct. 281, 88 L. Ed. 333, 345, was decided on January 3, 1944, wherein it was said: "It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act [3] is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences."

In the field of rate-making, we have been largely guided by the decisions of the United States Supreme Court, and have necessarily relied upon the views of that court as to the constitutional requirements. In *Bangor Water Co. v. Public Service Commission,* supra, 82 Pa. Superior Ct. 48, 55, this court, in an opinion by the late President Judge KELLER, said: "The decisions of the Supreme Court of the United States require us to base the fair return upon its present value; that is, its reasonable value at the time it is being used for the public."

"It is impossible," the majority opinion states, "from the order of the commission now before us to determine the process by which it determined the rate base." On

---

[3] The Federal Natural Gas Act of 1938 and the Pennsylvania Public Utility Law of 1937 are similar in some respects.

the contrary, the order has no other basis to support its validity than the worthless testimony of the utility's witness as to reproduction cost. The standard furnished by the majority opinion for the future guidance of the commission is of such a nature as to be impossible of practical application except in so far as the commission is obliged to accept the utility's evidence as to depreciated reproduction cost in the determination of fair value and in fixing a rate base.

A pertinent inquiry would be: Where do we stand on utility valuation as a result of the *Peoples* case, 153 Pa. Superior Ct. 475, 34 A. 2d 375, and *Philadelphia Transportation Co. v. Pennsylvania Public Utility Commission*, 155 Pa. Superior Ct. 9, 37 A. 2d 138, and the majority opinion in the present case? In the *Philadelphia Transportation Company* case this court said (p. 21): "This finding [of original cost] is ineffective in determining value for the reason that the costs were not trended to reflect current prices of labor and materials on that date." In the same case we also said (p. 22): "In the absence of adjustments of original or historical costs to determine present fair value as of the date in question the finding of the commission [as to original cost] is entitled to little consideration as a determining element."

In the *Peoples* case, 153 Pa. Superior Ct. 475, 484, 34 A. 2d 375, this court said that unless there has been no great change in cost levels, or there has been a change but proper adjustment made based upon competent evidence of price trends, original cost is irrelevant to rate base determination. Now we again say—original cost must be trended. Such pronouncements are judicial legislation, and are in conflict with our own statements and with the statutory law which we have recognized. If any such qualification of original cost as an element of fair value exists, it is not to be found in any statute or legislative enactment; and no acceptable reason has been even suggested in support of the validity of such judicial

amendment. In the *Peoples* case, 153 Pa. Superior Ct. 475, 482, 488, 34 A. 2d 375, we said "the legislative mandate in this commonwealth is that the rate base is fair value," and that "our legislature adopted the Public Utility Law of 1937 and wrote 'fair value' into section 311 (66 PS § 1151), and that standard, minus a detailed list of the elements constituting fair value, was carried over from the Public Service Act of 1913." In order to retain a proper perspective, it is to be noted that five months later, in the *Philadelphia Transportation Company* case, we refused to be bound by these declarations, and rejected the fair value elements which did not suit us notwithstanding the plain words of the statute which we had held controlling but did not follow.

I have previously quoted section 20, art. 5, of the Public Service Company Law of 1913. In construing that section we have said it was mandatory to consider all of the elements enumerated in the section. We said in *Beaver Valley Water Company v. Public Service Commission*, 76 Pa. Superior Ct. 255, at page 259: "The Public Service Company Law (article V, section 20a), directs that in ascertaining and determining the fair value of a public service company's property it may [shall] take into consideration among other things (1) the original cost of construction; (2) the amount in market value of its bonds and stocks; (3) the probable earning capacity under the rates fixed by the commission; (4) expenditures for obsolete equipment and construction,— (as warranted, in connection with (2), (3) and (4), by the circumstances and historical development of the enterprise)—; (5) reproduction costs of the property, based upon the fair average price of materials, property and labor; (6) developmental and going concern value— all of which, together with any other elements of value, are to be given such weight as may be just and right in each case." See, also, *Bangor Water Co. v. Public Service Commission*, supra, 82 Pa. Superior Ct. 48, 52.

Nevertheless, in the *Peoples* case, 153 Pa. Superior Ct. 475, 34 A. 2d 375, and in the *Philadelphia Transpor-*

*tation Company* case, 155 Pa. Superior Ct. 9, 37 A. 2d 138, and again in the present majority opinion, this court has ruled out original cost of construction unless the items are trended, and by elimination nothing is left upon which a rate base can be predicated by the commission except reproduction cost new less depreciation. The result is palpably wrong, and the power to fix fair value passes largely to the utility. As the first specific element of fair value, original cost is mentioned both in the Act of 1913 and in our opinion in the *Beaver Valley Water Company* case without any limitation or suggestion that consideration of this element shall depend either upon the persistence of price levels or the application of trends. The same is true of *Smyth v. Ames*. To the contrary actual invested capital has always been considered in Pennsylvania as one of the relevant valuation factors. See *Highspire Water Co. v. Public Service Commission,* 76 Pa. Superior Ct. 504; *Borough of Lewistown v. Public Service Commission,* 80 Pa. Superior Ct. 528; *New Street Bridge Co. v. Public Service Commission,* 271 Pa. 19, 38, 114 A. 378.

In the *Solar Electric Company* case, in making our own determination of fair value, we considered book cost of investments, and therefore the commission should not be prohibited from doing likewise. Rate-making should be a simple process rather than a tangled and mystic affair. The administrative agency should have freedom of action under equitable principles. Original cost less depreciation is a ready and equitable element for making a finding of fair value and for ultimate fixing of rates; likewise the straight-line or age-life method is proper for determining the amount of depreciation to be deducted from the cost of the plant.

Adding to the confusion is our statement in the *Philadelphia Transportation Company* case that the market value of securities as one of the elements to be considered in finding fair value should have been disregarded by the commission. This holding is in conflict

with the statutory mandates as interpreted by us in other cases, as well as with the rules of law previously laid down by this court with respect to the factors to be considered in arriving at a fair value determination. In *Solar Electric Company* case, supra, 137 Pa. Superior Ct. 325, 9 A. 2d 447, we said that we followed *Smyth v. Ames,* and that the elements to be considered by the commission in ascertaining and determining fair value were those enumerated in section 20, art. 5, of the Public Service Company Law of 1913, P. L. 1374, and we went on to say (p. 336) : "While the new act (Public Utility Law) does not go into details as to the items which should be considered by the commission in fixing the fair value of a utility's property, as fully as the old act (Public Service Company Law) did, this was not because of any intention to change the law in this respect, but because the decisions of the United States Supreme Court and of our Supreme Court had definitely settled the principles to be applied by the commission in arriving at such fair value, and they did not require elaboration in the statute." Section 20, art. 5, of the Public Service Company Law of 1913, and *Smyth v. Ames* recognized market value of bonds and stocks as one of the relevant elements to be considered by the commission in determining fair value.

We have thus, so far as the State of Pennsylvania is concerned, neither consistency nor continuity of the utility law.

I think a solution of this case might be for us to accept the commission's original finding of fair value, including working capital, of $21,566,085, and accept the alleged additions to the utility's property since 1938, in the net amount of $4,334,096, providing it is stipulated that this amount represents capital investment and not expensed items. We would thus have a rate base of $25,-900,181, with an allowable return of 6½ per cent. This would be adequate for all purposes, and would represent fair value determined in accordance with the law.

Ross, J., joins in this dissent.