Schuylkill Valley Lines, Inc., Appellant, *v.*
Pennsylvania Public Utility Commission et al.

394

Argued April 20, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Hamilton C. Connor, Jr.,* with him *Frederic L. Ballard* and *Ballard, Spahr, Andrews & Ingersoll,* for bus company, appellant.

*Lloyd S. Benjamin,* Assistant Counsel, with him *Charles E. Thomas,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*M. H. Goldstein,* for Montgomery-Chester Counties Industrial Union Council et al., appellees.

OPINION BY RHODES, P. J., September 27, 1949:

This is a rate case. These appeals are from the order of the Pennsylvania Public Utility Commission of February 1, 1949. Appellant, a passenger bus transportation utility, operating about forty-six buses in the Norristown, Conshohocken, Phoenixville area, sought an increase in rates by tariff filed with the Commission on April 27, 1948. The tariffs, to become effective May 30, 1948, provided, in general, that the former rate of 7½ cent token (2 for 15 cents) or 8 cent cash fare be increased in the Norristown-Conshohocken areas to 8⅓ cent token (3 for 25 cents) or 10 cent cash fare. Following a complaint as to the reasonableness of the proposed rates by the Montgomery-Chester Counties Industrial Union Council and District No. 7 United Steel-

workers of America, the Commission, on May 24, 1948, instituted an investigation on its own motion to determine the reasonableness of the rates. The Commission's investigation included consideration of temporary rates. Acting under section 308 (b) of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1148, the Commission also suspended operation of the proposed rates until February 28, 1949. Extensive hearings were held. By the final order of February 1, 1949, the Commission denied temporary rates and refused to permit appellant to raise its rates except to the extent of increasing the 7½ cent token fare (2 for 15 cents) to 8 cent straight cash fare, effective February 13, 1949.

The Commission found a depreciated original cost, including amounts for materials, supplies and cash working capital totaling $40,570, of $357,538, and a depreciated reproduction cost of $441,122. After considering the elements of value—and recognizing that the utility was a going concern, but without making any separate allowance for going concern value—the Commission fixed a fair value of appellant's property for rate making purposes at $390,000. Applying a 7 per cent rate of return to a fair value of $390,000 gave an allowable return of $27,300.

Annual revenues under existing fares for the year 1948 were $693,889; and, after allowable operating expenses of $676,423, $17,466 was available towards a fair return or 4.5 per cent on a fair value of $390,000. The Commission's order was designed to produce an annual revenue of $708,092 or an increase in net annual revenue of $14,203. The Commission found that the proposed tariffs would produce a gross operating revenue of $748,989 annually, and result in a net increase in annual revenue of $55,100 to appellant. It concluded that the proposed fares would yield an excessive return, and that they were therefore unjust and unreasonable. Appellant challenges the final order of

the Commission fixing rates as confiscatory. The broad scope of review indicated in *Solar Electric Co. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 325, 353, 354, 9 A. 2d 447, is applicable. Cf. *Pittsburgh v. Pennsylvania Public Utility Commission,* 158 Pa. Superior Ct. 229, 235, 44 A. 2d 614.

ORIGINAL COST: The finding of the Commission with respect to a depreciated original cost was $316,968.[1] Appellant claimed $417,752 for depreciated original cost.[2] In arriving at a lower figure the Commission reduced appellant's claim for "Franchises" by $27,612, "Land" by $6,563, and "Revenue Equipment Less Depreciation" by $79,881. We shall consider the deductions in the above order: (a) FRANCHISES: Appellant was incorporated June 2, 1933, as a successor to Schuylkill Valley Traction Company, an electric street railway company which had defaulted in 1932 on its bonds and in rentals to underliers. A bondholder's protective committee acted in bringing about the abandonment of the old street railway company and in forming the new bus company. The Conway Corporation, organized in 1926 for the purpose of rendering "expert supervisory and consulting service to public utilities," was employed to assist in the abandonment of the street railway service and the substitution of motorbus service. Shortly after incorporation in 1933, Conway Corporation entered into a contract with appellant to supervise its operations; that contract is still in effect. Clinton D. Smith, the present vice-president and general manager of appellant, and Russell S. Stoughton, treasurer, are also employed by Conway Corporation, and devote part of their time to each company. Thomas D. Conway, Jr.,

---

[1] This is exclusive of materials and supplies—$21,170; cash working capital—$19,400; and cost of financing—$8,250.

[2] This is exclusive of materials and supplies—$21,170; cash working capital—$53,000; going concern value—$64,430; and cost of financing—$8,703.

is chairman of the board of directors of appellant, and also president of the Conway Corporation. Of the $27,612 franchise item in dispute $13,199.52 was paid by the bondholders protective committee in connection with the abandonment of street railway service. On December 28, 1933, Conway Corporation submitted a bill of $14,412.85 for services and agreed with the bondholder's protective committee to accept 2,120 shares of Class B non-par voting common stock of appellant in payment. In disallowing the item of $27,612 for franchises, being the total of $13,199.52 and $14,412.85, the Commission held that appellant had failed to differentiate the cost of abandonment of the old street railway from the cost of organization of the new bus company. However, appellant's original cost depreciated included $31,072 for franchises and the Commission did allow an item of $4,090 for franchises, being the difference between $31,072 and $27,612; part of this $4,090 allowance included some of the original cost of incorporation. The burden of proof rested with appellant and it was obliged to differentiate and establish items of organization expense. Section 312 of the Act of May 28, 1937, P. L. 1053, 66 PS §1152. It does not appear that the appellant fully met that burden. We are not convinced the franchise item of $27,612 should be allowed. (b) LAND: Included in the original cost of $16,736 for land and land rights is a parcel of vacant land sixty by sixty-one feet, purchased in 1947 for $6,563. This land is located in the business district of Norristown, and was purchased as a site for a new office building. Although plans have been drawn for a proposed building, no contracts have been let and the work has been deferred indefinitely due to high building costs. From the time of purchase until the present the land has been used under lease as a parking lot. The Commission, in disallowing this item as a component of original cost, held that it was not property devoted

to a public use in any of appellant's operating activities. It is conceivable, as in the cases of *Denver Union Stock Yard Co. v. United States*, 57 F. 2d 735, and *Indianapolis Water Co. v. McCart*, 89 F. 2d 522, relied on by appellant, that vacant land acquired by a public utility would, under certain circumstances, be properly includible in the rate base. Distinguishing factors are here present. Appellant's use of the land is subordinate to its main business of bus transportation; the use of the land for an office building was not imminent; and the lot was in fact leased for other purposes. (c) REVENUE EQUIPMENT: On July 7, 1948, or subsequent to the filing of a new tariff, but prior to the hearings in this case, appellant entered into a "contract" with Atlantic Ford Motor Coach Company for the purchase of ten new motor passenger buses at a probable price of $9,500 each. The Commission held that, under the extremely indefinite "contract," acquisition of the ten new buses was so doubtful that the cost differential of these buses must be excluded in calculating depreciated original cost. This cost differential, representing the difference between appellant's depreciated original cost figure of $263,344 (which included the cost of the ten new buses and excluded depreciated original cost of ten older buses to be replaced), and the Commission's depreciated original cost of revenue equipment of $183,463 amounted to a net difference between appellant's and the Commission's depreciated original cost of revenue equipment of $79,881. The evidence sustains the Commission's finding that purchase of the ten new buses was highly problematical. The "order" was contained in a letter which stated in substance that the price of $9,500 was an estimate, and that appellant had the right to cancel if a sample bus was not satisfactory or if the price was substantially higher than the estimated price of $9,500. Delivery was to be made over the next twelve months although the type of bus "ordered" was not then in

production. The rate making process is prospective, not primarily retrospective or static. Modernization of the facilities of a utility, in the public interest, should not be hampered by a narrow or rigid regulation. However, the property of the utility must be actually in the public use, or within reasonable certainty of such use in the foreseeable future. In view of the extreme indefiniteness of the agreement, the Commission's action in excluding the cost differential of the ten new buses will not be set aside.

REPRODUCTION COST: Appellant's depreciated reproduction cost figure for its property was $576,321;[3] the finding of the commission on such cost was $392,302.[4] In reproduction cost as in original cost, the Commission eliminated substantially the same amounts for "Franchises," "Land" and "Revenue Equipment." What we have said as to the land purchased for a future office site, and the "contract" for the ten new buses applies equally in the determination of reproduction cost. Admittedly, reasonable organization costs were proper subjects for consideration in arriving at a reproduction cost estimate. *Solar Electric Co. v. Pennsylvania Public Utility Commission,* supra, 137 Pa. Superior Ct. 325, 356, 9 A. 2d 447. The Commission allowed 1 per cent of appellant's tangible physical assets, or $6,500, while appellant claims 5.57 per cent or $38,779 for organization expense. In view of the relatively weak support produced by appellant for this item, we cannot say that the allowance by the Commission was improper. Furthermore, any reasonable increase in this item would not substantially affect the end result or sustain appellant's higher fares.

---

[3] This is exclusive of appellant's claims for materials and supplies, cash working capital, going concern value, and cost of financing.

[4] This is exclusive of allowance for materials and supplies, cash working capital, and cost of financing.

ACCRUED DEPRECIATION: The principal dispute is on accrued depreciation of appellant's revenue equipment. Both in original cost and reproduction cost the Commission applied a straight line age-life formula to determine accrued depreciation. See *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission*, 141 Pa. Superior Ct. 5, 14, 15, 14 A. 2d 133. The Commission used the same method for determining annual depreciation in the matter of allowable expenses. The Commission adopted a whole useful life of buses of eight years and allowed a nominal salvage value of four per cent, resulting in a 12 per cent annual depreciation. Applying this formula to revenue equipment having an original cost of $367,561 and taking the average age of appellant's buses at 4.175 years, the Commission found an accrued depreciation of $184,188 on original cost. Applying the same formula to a reproduction cost of revenue equipment of $432,177, but using an average age for buses of 4.47 years, the Commission found accrued depreciation of $231,800 and a depreciated reproduction cost of revenue equipment of $200,377. Appellant complains that the Commission erred in refusing to accept or consider the accrued' depreciation estimate of its expert for reproduction cost of revenue equipment, viz., $155,583. It contends the Commission cannot compute depreciation on the basis of formulas alone, but must consider the actual condition of the property. Appellant's witnesses testified that to provide the best transportation the buses should be retired within five years. However, the record also shows that, in actual practice, due in part to wartime conditions, buses had been used beyond eight years, and in some instances were retired after an average life of 9.85 years. In view of this evidence, it cannot be said that the allowance for annual depreciation was not based on the evidence. Nor was it improper for the Commission to compute accrued depreciation on substantially the same

basis as annual depreciation. We have held that allowances for annual depreciation should be reasonably consistent with allowances for accrued depreciation. *Solar Electric Co. v. Pennsylvania Public Utility Commission,* supra, 137 Pa. Superior Ct. 325, 365, 9 A. 2d 447; *Blue Mountain Telephone & Telegraph Co. v. Pennsylvania Public Utility Commission,* 165 Pa. Superior Ct. 320, 324, 67 A. 2d 441. The Commission was not bound to use the same average age, 4.175 or 4.47 years, in computing accrued depreciation as to original cost as it did in computing such depreciation with regard to reproduction cost. As counsel for the Commission points out, the difference in the average age figures used in computing depreciation on original cost and on reproduction cost of revenue equipment is the result of greater, rather than less, accuracy in the methods used. Nor was the Commission bound to accept the opinion evidence as to "observed" accrued depreciation of appellant's witness Hazlett which was based largely on estimated mileage life. Cf. *Blue Mountain Telephone & Telegraph Co. v. Pennsylvania Public Utility Commission,* supra, 165 Pa. Superior Ct. 320, 326, 67 A. 2d 441. Accrued depreciation must of necessity represent a judgment figure. *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 475, 491, 34 A. 2d 375.

CASH WORKING CAPITAL: Appellant claimed one month's operating expenses or $53,000. The Commission allowed $19,400 for this item. The claims deleted by the Commission were $21,900 for cash deposit in bank, $9,900 equalization fund, and $1,800 passenger receipts in transit. In so doing the Commission pointed out that in transportation utilities cash is received by the utility in the form of fares paid by riders before rendering service. Under such circumstances the need for cash working capital is appreciably reduced. Cf. *Blue Mountain Telephone & Telegraph Co. v. Pennsyl-*

*vania Public Utility Commission,* supra, 165 Pa. Superior Ct. 320, 327, 328, 67 A. 2d 441. The figure allowed by the Commission for cash working capital gave appellant a proper margin of safety to conduct its operations.

GOING CONCERN VALUE: Appellant claims $64,430 for going concern value. The Commission made no special allowance for going concern value but considered the fact appellant was a going concern in reaching its final determination of fair value. The burden of proof was upon appellant to show that it was entitled to a special allowance for going concern value. *Cheltenham & Abington Sewerage Co. v. Public Service Commission,* 122 Pa. Superior Ct. 252, 265, 186 A. 149; *Solar Electric Co. v. Pennsylvania Public Utility Commission,* supra, 137 Pa. Superior Ct. 325, 361, 365, 9 A. 2d 447. Appellant failed to show it was entitled to any special allowance for going concern value and the action of the Commission in this respect was proper.

RATE OF RETURN: Appellant claims 8½ per cent on a valuation of $650,000 or $55,250 annually. The Commission allowed 7 per cent on its fair value finding of $390,000. Appellant's claim is based upon the expert opinion testimony of its witness that an 8½ per cent return is necessary to attract capital in the transit industry generally. The Commission considered the testimony of appellant's expert witness, at length, and rejected it largely because it dealt with an entire industry rather than with a particular utility. The Commission was not bound to accept the expert opinion testimony of appellant's witness. The rate of return is necessarily a variable depending on many factors; it should be adequate and may not be confiscatory. *Solar Electric Co. v. Pennsylvania Public Utility Commission,* supra, 137 Pa. Superior Ct. 325, 388, 9 A. 2d 447. But appellant's claim that it is entitled to earn 8½ per cent net return on a fair value of at least $650,000 would, if allowed, result in an unjustifiable incon-

sistency. The rate of return of utilities should not entirely ignore prevailing low interest rates or low cost of money. High values on the basis of present costs with a very high return—out of line with economic realities—on such reproduction costs would obviously produce an excessive and an unreasonable return.

OPERATING REVENUES: Actual operating revenue for the year ending March 31, 1948, was $695,548, which, adjusted for Saturday bank closings, amounted to $693,889. Under the proposed fare increase, on the basis of the previous year's traffic, appellant's revenues would be increased in excess of $81,000 annually. Appellant's witnesses estimated the proposed tariff would produce additional revenue of $48,617 per year, or a total revenue of $742,505. The Commission found that the increase under the proposed fares would be $55,100 annually, and that the total revenue would be $748,989. In arriving at these estimates, the Commission used a 4 per cent over-all decline in volume of traffic due to consumer resistance to price increase, while appellant used 5 per cent for this item. The difference between the Commission's and appellant's estimate in total annual revenue under the increased tariff is not material. Under either estimate, the total annual revenue would yield an excessive return; and the Commission found that appellant was entitled to a total annual revenue of $708,902.

OPERATING EXPENSES: Actual operating expenses for the year ending March 31, 1948, totaled $639,804 exclusive of income taxes, or $662,034 including taxes of $22,230. The Commission found that future operating expenses under present fares would be $676,-423 or, under an allowable revenue of $708,092, allowable operating expenses would be $680,792. Based on appellant's forecast of revenues under the proposed tariff of $742,506 (excluding any claim for the ten new buses), appellant's forecast of operating expenses was $718,504,

The principal items of dispute are the following estimated operating expenses disallowed by the Commission: (a) MANAGEMENT FEES: The Commission completely eliminated $17,836, being "management and supervision fees and expenses" charged appellant by Conway Corporation. Salaries paid appellant's officers totaled $19,760, as follows: Clinton D. Smith, vicepresident and general manager of appellant, $11,000; Russell S. Stoughton, treasurer, $4,800; and the president and secretary receive a total of $3,960. The evidence shows that these officers performed all the necessary functions of management. The Commission found that the "management and supervision fees" of $17,837 charged appellant by Conway Corporation were a duplication of charges, and that such services were not reasonable and proper for rate making purposes. From the record it appears that, included in this item of $17,837 charged appellant by Conway Corporation, there were salaries paid as follows: Thomas D. Conway, Jr. (chairman of the board of appellant), $2,765, Smith, $1,010, and Stoughton, $5,954. Further, the evidence fully supports the Commission's statement that Conway Corporation is an affiliate of appellant, and that it owns all of the Class B common stock of appellant. In addition to an item of $5,395 for stenographic and clerical expenses, the bill for $17,837 rendered appellant by Conway Corporation included an item of $2,268 for "Profit of 15 per cent to the Conway Corporation." The Commission, in eliminating the item of $17,837 for management fees, increased the salary allowance of appellant from $19,760 to $22,500, in view of the services rendered by Thomas D. Conway, Jr., as chairman of the board of appellant. Charges arising out of intercompany relationships between affiliates should be scrutinized with care; the burden was upon appellant to show that charges for services rendered by an affiliate were reasonable and proper. *Scranton-Spring Brook Water*

*Service Co. v. Public Service Commission,* 119 Pa. Superior Ct. 117, 142, 181 A. 77; *Solar Electric Co. v. Pennsylvania Public Utility Commission,* supra, 137 Pa. Superior Ct. 325, 373, 374, 9 A. 2d 447; section 701 (a) and (c) of the Act of May 28, 1937, P .L. 1053, 66 PS §1271. Elimination of the $17,837 management item was fully justified by the evidence. (b) RATE CASE EXPENSE: Appellant claims $50,000, to be amortized over a five-year period, or $10,000 annually, to cover the costs of this rate proceeding. The Commission allowed $12,000 total or $2,400 annually. In view of the nature of the proceedings and the fact that appellant was unable to sustain its proposed rate increases except to a limited extent, an allowance of $12,000 appears to be entirely reasonable. Cf. *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* supra, 153 Pa. Superior Ct. 475, 499, 34 A. 2d 375. (c) MISCELLANEOUS ADMINISTRATION & GENERAL EXPENSES: Appellant claimed $41,117, the Commission disallowed items totaling $4,513, resulting in a net allowance of $41,604. The items struck out included dues for membership in a local fire department, economy league, contributions to various charities, employes' picnic expense, Christmas turkeys to employes, etc. It does not appear that allowance of any of the disallowed items would be proper for rate making purposes. Cf. *Solar Electric Co. v. Pennsylvania Public Utility Commission,* supra, 137 Pa. Superior Ct. 325, 378, 379, 9 A. 2d 447; *Denver Union Stock Yard Co. v. United States,* 304 U. S. 470, 482, 483, 58 S. Ct. 990, 82 L. Ed. 1469. (d) ANNUAL DEPRECIATION EXPENSE: On revenue equipment the appellant claimed annual depreciation on the basis of a formula which charged off 90 per cent of the value of a bus in the first five years. This formula, allegedly based on actual mileage operated, claimed 20 per cent of the cost of the bus for each of

the first four years, ten per cent for the fifth, 5 per cent for the sixth, and 2½ per cent for the seventh and eighth years. Appellant's avowed policy was to retire buses at the end of five years. However, the record shows that the buses retired during 1946-1947 had a realized life of 9.85 years. As previously stated in discussing accrued depreciation of revenue equipment, the Commission used the same formula for both annual and accrued depreciation, viz., 12 per cent yearly for eight years, giving the bus a salvage value of 4 per cent of its cost. The record does not contain the actual mileage records of appellant's buses, and there is but little evidence to support its claim of 20 per cent annual depreciation on buses. The Commission found that appellant's depreciation practice was unrealistic and did not conform with the Uniform System of Accounts. In view of all the circumstances, we cannot say that the Commission's consistency in arriving at both annual and accrued depreciation on the same basis was improper, or that the Commission's allowances for accrued and annual depreciation were unfair to the appellant. The same conclusion is applicable to appellant's claim of a 4 per cent annual depreciation on its garage building, costing $114,484. On this the Commission allowed 2 per cent annual depreciation. The Commission noted that the 2 per cent rate was that used by appellant in its reproduction cost estimate.

We are of the opinion that the Commission's final order does not result in confiscation, and that the rates fixed by the final order of the Commission give appellant a fair return on the fair value of its property used and useful in the public service. Cf. *Solar Electric Co. v. Pennsylvania Public Utility Commission*, supra, 137 Pa. Superior Ct. 325, 364, 9 A. 2d 447.

The order of the Commission is affirmed.