# Highspire Water Company, Appellant, *v.* The Public Service Commission.

*Public Service Commission—Water companies—Rates—Valuation for rate-making purposes.*

An order of the Public Service Commission determining the value of a water company for rate-making purposes at $28,000 is not confiscatory where it appears that the company was organized in 1902, and that the actual investment, as shown on the books of the company, is but $24,250.   The fact that the company has outstanding bonds to the amount of $100,000 was properly disregarded by the Public Service Commission in determining the fair value of the property where there is nothing in the evidence to show that the company had cash property or anything else to represent what ought to have been the proceeds of such bond issue.

Where the valuation as fixed by the Public Service Commission is $3,750 more than the total amount of the investment, and no deduction is made for depreciation, such valuation is not confiscatory and will be sustained.

Submitted March 14, 1918.   Appeal, No. 4, March T., 1918, by Highspire Water Company, from order of the Public Service Commission, Complaint Docket No. C. 517-1915, in case of George W. Cover et al. v. Highspire Water Company.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Affirmed.

Complaint against Highspire Water Company on account of increased rates effective November 1, 1915.

The charges in the schedule were alleged to be unjust and unreasonable.

The Public Service Commission, after hearing, made an order fixing the fair value of the property of the Highspire Water Company as of April 1, 1916, at $28,000 and allowed a gross income of not more than $2,600 per year. From this order the Water Company appealed.

*William H. Sponsler,* for appellant.

*John R. Geyer,* of *Fox & Geyer,* for intervening appellee.

*John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

PER CURIAM, April 26, 1921:

This is one of a number of appeals involving the question of the extent and character of the jurisdiction to be exercised by this court, in reviewing appeals from the determination of the Public Service Commission, which question was involved in the case of Ben Avon Boro. v. The Ohio Valley Water Company, pending in the Supreme Court of the United States when this appeal was argued. The Supreme Court of Pennsylvania having recently remitted the case of Ben Avon Boro. v. The Ohio Valley Water Company to this court, with direction to determine, upon our own independent judgment as to the law and the facts, whether the order of the Public Service Commission was confiscatory, and this court having disposed of that appeal in accordance with their instructions, it now becomes our duty to apply the same principles in disposing of this case.

This company supplies water to the small borough of Highspire, the water being conducted from springs through a gravity system of pipage. The commission found the value of the property of the appellant, used and useful for the service of the public, to be not in excess of $28,000; that the operating expenses of the company should not exceed $250 per year, that $100 per year will cover all the tax charges of the company, and that the company was entitled to an allowance for depreciation of its property in the amount of $250 per year. The commission ordered the water company to cancel the tariff which it had filed and file a new tariff of rates which would produce a gross income of not more than $2,600 per annum. The gross income which the company would thus be allowed to collect would, after

deducting $600 for operating expenses, taxes and depreciation, leave a net income of $2,000, which would be in excess of 7 per cent upon the amount which the commission found to be the value of the property of the appellant. We find nothing in the evidence which would warrant a finding that the operating expenses of the water company, under either its present or former management, ever exceeded $250, nor that $100 per year was not a reasonable allowance for the taxes which the company would be called upon to pay, nor that the allowance for depreciation was not sufficient. The only question to be considered, therefore, is whether the allowance of a net revenue of $2,000 is a fair return upon the value of the property of the appellant. The reasonableness of the rate of return, 7 per cent, upon the value of the property, whatever it may be, is not the subject of complaint by appellant. The appellant asserts, however, that the determination of the commission that the value of its property is not in excess of $28,000 is confiscatory.

This company was incorporated in 1902 and was controlled, and for all practical purposes owned, by three men who resided in the neighborhood. Those three gentlemen, having organized the corporation, proceeded on behalf of the company to make a contract with themselves, as a partnership, under the provisions of which they undertook to furnish the real estate, water supply, necessary rights of way, and construct the entire system of the company, furnishing all the materials required, and, as the consideration for all this, they were to receive the entire stock of the company and the entire bond issue of $25,000. This contract was fully complied with, the three men who had organized the company received all the stock and the bond issue of $25,000 and they acquired for the company all the land and water rights which it now owns, they furnished all the pipe and other supplies and performed all the work in constructing the plant which had been contemplated by the contract, and which constituted the entire property of the company

when, in 1910, they sold their interests in the company
to other parties, receiving payment in cash, with which
they paid off all of the bonds which had been sold and all
the indebtedness of the company, secured the few shares
of stock outstanding, and transferred all the stock to the
new owners. Mr. Fletcher, one of the men who had
organized the company and continued in control thereof
until May, 1910, was called as a witness and testified
fully and frankly as to the organization of the company,
the acquisition of the property, the construction of the
plant and the actual cost thereof. It clearly appears
from his testimony that the parties put no money into
the property which was not obtained by the sale of
bonds, to the amount of $15,400, and the proceeds of
notes aggregating $7,350, which the parties had pro-
cured to be discounted, pledging the remaining $9,600
of bonds as collateral. The parties may, temporarily,
have put in other moneys, but they received it all back
out of the proceeds of the bonds and notes above men-
tioned. The bonds to the amount of $15,400 were sold at
par, the notes, for which the remaining $9,600 of bonds
were pledged as collateral, amounted to $7,350, thus
making the total amount of the cost of the acquisition
of the property, the construction of the plant, the pay-
ment of the interest on the bonds and notes, during the
period of construction of the plant and development of
the business of the company, making it a going concern,
$22,750, down until May 1, 1910, when the new manage-
ment assumed control. The new management subse-
quently expended $1,500 in extension of the lines of the
company, making the total amount invested in the prop-
erty $24,250, at the date of the hearing before the Public
Service Commission. The management which obtained
control of the company in May, 1910, at once proceeded
to introduce modern methods, they almost immediately
issued bonds to the amount of $100,000 and, as a conse-
quence, it was not long before the company was involved
in serious difficulties. That a water company in which

$24,250 had been invested and which supplied a small village with water could not pay interest on a bond issue of $100,000, for which it had received no consideration, is not surprising.  The Public Service Commission very properly refused to regard this bond issue as constituting any addition to the value of the property of the appellant.  The company did not have cash, property nor anything else to represent what ought to have been the proceeds of that bond issue.  It is not improper here to observe that the parties who had obtained control of this company  and authorized this unwarranted issue of bonds were the same who resorted to like proceedings in the case of the Newport Water Company, in the appeal of which company from an order of the Public Service Commission, an opinion has this day been filed.

The appellant called as a witness an engineer who appears, from his own testimony, to have been intimately associated in this and other transactions with the parties who secured control of this company in 1910 and made the bond issue of $100,000 which swamped the company.  That witness testified that the reproduction cost, new, of appellant's property was $31,774.43, and that its value as a going concern was $56,636.89.  We have carefully considered the testimony of this witness, in connection with all the other evidence in the case and are not convinced that it is worthy of serious consideration.  His testimony as to the reproduction value of $31,774.43 is based upon a list of items, the value of many of which is, in the light of the other evidence in the case, manifestly overestimated.  It is not necessary to specify these items, but we will refer to the following which are typical.  He values the real estate and water rights at $2,000.  He confessedly knew nothing about the value of lands in that neighborhood.  He may have assumed that the spring located upon this land was the only source from which a supply of water could be obtained, but Mr. Fletcher, who was familiar with the vicinity testified that there were other springs from which water could

have been obtained. The only other witness who was familiar with values of land in that neighborhood testified that the property of this company was worth only $100 per acre, and the evidence discloses that there were only two acres of it. The value of this land with the spring upon it was, under the testimony of the witnesses who knew anything about values in that neighborhood, not more than $400. Among the items which the witness includes in his estimate of the cost of reconstruction is $2,000 for the organization of the company. This does not include counsel fees for he has a separate item as to that expense. If it was intended to include in this item the State charges on incorporation and the creation of reasonable indebtedness and the bonus on capital stock, the printing of bonds, to a reasonable amount, (not $100,000) the expense of the incorporation and such books as a company of this character ought to have, an outside estimate would be $500. In his testimony as to the going value of the property of the company he includes $4,766.16 as discount on bonds. It may be that if the other companies which this witness and his associates control are managed in the way in which they proposed to direct the business of this water company, that the discount on the bonds which they sold would be 15 per cent or more. They were certainly fortunate if they escaped with a discount of 15 per cent upon the $100,000 in bonds which were issued by this company. The testimony of the man who knew all about the bonds which were issued when this plant was built is clear and distinct that the bonds were sold at par. We might quote other instances of manifest overestimates of values or expenses, as to items concerning which no engineering skill is involved, but we do not deem it necessary. There is no evidence in the case that the prices of material and cost of construction had advanced at the time the appellant filed its schedule of rates, or of the hearing before the commission, over and above what they were at the time this plant was constructed. We have the testi-

mony, as to the actual amount of money invested by one of the men who paid the bills, who was entirely disinterested and perfectly frank. His testimony established not only the actual cost of construction but the cost of carrying the plant during its unproductive period, interest during the period of construction and interest on all the money invested during the period that the income of the company was not sufficient to meet that charge. The total investment, including all the items above stated, was $24,250. The Public Service Commission determined the present value of the property to be $28,000, or $3,750 more than the total cost of the investment, and made no deduction for depreciation. We are not convinced that the value of the property of the appellant used and useful for the service of the public, was at the date of the hearing before the commission, more than $28,000, and have no warrant for holding that the determination of the commission was confiscatory.

The appeal is dismissed at the cost of the appellant.