## St. Clair Coal Co., Inc., Appellant, *v.* Public Service Commission et al.

*Public Service Company Law—Rates—Change—Contract—Justification of increase—Measure of proof required—Valuation—Constitutional law—U. S. Constitution, article I, section 10.*

A contract between a public service company and a customer as to rates to be charged for the service which the company has agreed to render the customer is subject to change according to law. When rates are changed in accordance with the provisions of the Public Service Company Law, the newly established rates supersede contract rates which would otherwise be discriminatory. All public service company contracts are viewed as having been made in contemplation of this rule of law. The change of rates thus effected is not a violation of the constitutional prohibition against laws impairing the obligation of contracts.

When a public service company files a schedule increasing rates, and complaint is filed against such increase before its effective date, the company must "by the fair weight of the evidence" show that the filed rates under attack are of a kind not forbidden by the statute, and that the total revenue which the utility expects to receive under the schedules will equal and not exceed that to which it is entitled.

A valuation is not required in every case, and, where proper evidence is presented to the Public Service Commission to prove that the proposed increases in rates are intended to cover increased costs of operation, the order of the commission will be affirmed, although no valuation of the entire plant of the utility was made.

Argued April 24, 1922.    Appeal, No. 14, March T., 1922, by St. Clair Coal Co., Inc., from order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket, Nos. 3131 and 3702 in the case

of St. Clair Coal Company Inc., v. The Public Service Commission of the Commonwealth of Pennsylvania and Eastern Pennsylvania Light, Heat & Power Company, intervening appellee. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Complaint against increased schedule of rates filed by Eastern Pennsylvania Light, Heat & Power Company.

The complaints were filed in this case by St. Clair Coal Company, alleging that it entered into certain contracts with the Eastern Pennsylvania Light, Heat & Power Company, under which it was to get electric current at certain rates for 120 months; that the Eastern Pennsylvania Light, Heat & Power Company had filed schedules increasing its rates for electric current, and were charging for it at the increased rates. Answers were filed by the Eastern Pennsylvania Light, Heat & Power Company setting forth that schedules of increased rates had been filed, and that the St. Clair Coal Company had made payment for service on the basis of said increased rates until June 6, 1919. Said answers further denied that said increases resulted in rates which were unjust, unreasonable, unlawful and unduly discriminatory. The commission made an order dismissing the several complaints. Plaintiff appealed.

*Error assigned,* among others, was the order of the commission.

*J. E. B. Cunningham,* and with him *Spencer G. Nauman,* for appellants.—The schedules complained against do not merely write a new rate into existing contracts, but go further and impair their obligations by eliminating material provisions: Suburban Water Co. v. Borough of Oakmont, 268 Pa. 243.

*Byron A. Milner,* for intervening appellee.—All contracts with public service companies are subject to the provision that the rates must be reasonable and non-discriminatory, and are subject to change by law: Duquesne Light Co. v. P. S. C., 77 Pa. Superior Ct. 8; Suburban Water Co. v. Oakmont, 268 Pa. 243.

The wholesale business of the respondent should be self-sustaining: N. & W. R. R. Co. v. Conley, 236 U. S. 605.

*John Fox Weiss,* Assistant Counsel, and with him *Frank M. Hunter,* counsel for the Public Service Commission.

OPINION BY GAWTHROP, J., July 13, 1922:

This is an appeal by the St. Clair Coal Company from an order of the Public Service Commission determining that the wholesale power rates charged under Schedule C-1 of Supplement No. 1 of Tariff No. 6, and Schedule C of Tariff No. 7 of the Eastern Pennsylvania Light, Heat & Power Company, intervening appellee, are not un reasonable and unjustly discriminatory.

The St. Clair Coal Company, hereinafter called the Coal Company, is a large coal operator with collieries located near the Borough of St. Clair in Schuylkill County, Pennsylvania, and one of the largest wholesale power consumers of the Eastern Pennsylvania Light, Heat & Power Company, a public service company supplying light, heat and power in Schuylkill and Columbia Counties, and hereinafter called the Power Company. The Coal Company entered into a contract with the Power Company for electric service at its Silver Creek colliery on November 20, 1917, but did not begin to receive the service until October 24, 1918. The electric service from the Power Company for the St. Clair mine was contracted for on April 17, 1918. As a result of the latter contract, the steam power plant theretofore used by the Coal Company was scrapped, thus precluding the

use of other than electric service. At the same time there was installed at the St. Clair mine, at an expense of more than two hundred thousand dollars, an electric equipment for the purpose of taking the Power Company's service. At this mine, no service connection was made with the Power Company until December 23, 1918. The rates set forth in the contract of November 20, 1917, were identical with the wholesale power rates set forth in the Power Company's tariff which was effective on that date. On April 1, 1918, a supplement to the then existing tariff was filed, cancelling and withdrawing the wholesale tariff rates, except for customers then under contract with the company. On April 17, 1918, when the second contract was signed, the Power Company had no schedule whatever for wholesale power rates. On July 1, 1918, the Power Company issued Tariff No. 5, effective August 1st, Schedule C of which contained wholesale rates for such service as was furnished coal mining operations similar to those covered by the above-mentioned contracts. On October 17, 1918, Tariff No. 6 was issued, effective November 1, 1918. Service connection at the St. Clair colliery was made about two months after this tariff became effective, and at Silver Creek the connection was made a few days before this tariff became effective. The St. Clair Company was billed electric service at rates set forth under Schedule C of Tariff No. 6 and paid for the same without protest up to and including May, 1919. A little later, the Power Company filed supplement No. 1 to its Tariff No. 6, which changed Schedule C-1 relating to wholesale power rates by absorbing in the body of the rate structure the coal and war clauses of the former tariff, but not materially increasing the original cost of energy to the Coal Company. Tariff No. 7, effective November 1, 1920, was filed because the Power Company faced increased cost of coal, material and labor and because the wholesale power rates under the former schedule proved too low. The evidence of the Power Company before the commission showed that the

estimated revenue increase of the Power Company during one year under Tariff No. 7 would be approximately equivalent to the increase in the operating expenses during the same period. The Coal Company averred that the rates in the Power Company's tariffs are unjust, unreasonable and unduly discriminatory against consumers.

The complaint having been filed before the rates had become effective, the burden of proof was on the Power Company to sustain them. The question before this court is whether there is sufficient evidence in the record to sustain the order of the commission. The able counsel for appellant urges that, under the peculiar circumstances of this case, a special burden rests upon the Power Company to prove, not by the mere weight of the evidence but by evidence which is positive, unequivocal and convincing, that the rates under the contracts between the Power Company and the Coal Company were too low, and that the new rate is fully justifiable. He urges further that the new schedule impairs the obligation of the contracts between the companies. The question is not, however, whether the new rates under the tariffs involved will result in a substantial increase in power costs over the contract rates, nor whether the contracts were entered into under the persuasive influence of the Power Company's manager, nor because, in reliance upon the contracts, the Coal Company scrapped its steam plant and went to large expense in installing electric equipment. These matters are entirely outside the issue. The contracts are not a material or the important factor in the determination of the case. If they stipulate for a lower rate than that set forth in the schedule filed with the Public Service Commission, they are unlawful and discriminatory. A change of rates fixed by contract for the performance of service by a public utility company does not impair the obligation of the contract under the Constitution of the United States, and if it did the change would be unlawful: Suburban Water Co. v. Oakmont Borough, 268 Pa. 243. The power to re-

form contracts of this kind was granted under the Act of 1874 giving the courts jurisdiction over rates for certain classes of public service: Turtle Creek Borough v. Pennsylvania Water Co., 243 Pa. 401. Notwithstanding a contract fixing rates to be charged by a public utility, the new rate fixed pursuant to the provisions of the Public Service Company Law becomes the effective rate. "All public service contracts are viewed in the light of having been made with an implied provision that the rate named therein is subject to change, according to law, so as to keep it reasonable and nondiscriminatory at all times": Suburban Water Co. v. Oakmont Borough, 268 Pa. 243; Scranton v. Public Service Commission, 268 Pa. 192; Duquesne Light Co. v. Public Service Commission, 77 Pa. Superior Ct. 8. "To establish equality in reasonableness in rates or to prevent discrimination within the same classification, written contracts for a term of years, wherein rates differ from those within the same classification filed or fixed by the commission, must yield to the lawful schedule created for that service. In reaching the conclusion that the police power embraced such contracts, this court has considered the rate affected as it related to the general scheme of rates of a public utility. This was the test": New Street Bridge Co. v. Public Service Commission, 271 Pa. 19. Where a complaint has been filed before the effective date of the tariff, in which it is alleged that the rates contained in a certain schedule are unjust and unreasonable, a presumption arises that the new rates are unjust and unreasonable and the burden of rebutting this presumption is cast upon the utility. It initiated the rates; it must sustain them. By the fair weight of the evidence it must show that the filed rates under attack are of a kind not forbidden by the statute, and that the total revenue which the utility expects to receive under the schedules and classifications which make up the tariff will equal and not exceed that to which it is entitled. The burden is no greater than this.

In the light of the foregoing, it is our duty to determine whether there is sufficient evidence in the record to sustain the order of the commission.  After a careful and patient examination of the record, we cannot say that there is not sufficient competent evidence to support the order.  The first complaint was filed by the Coal Company December 10, 1919, against the wholesale power rate under Supplement No. 1 to Tariff No. 6, which would have become effective December 12, 1919.  The second complaint was filed October 19, 1920, against the wholesale power rate under Tariff No. 7 which would have become effective November 1, 1920.  The complaints do not challenge the rates under any schedules but those applying to wholesale power.  The uncontradicted evidence is that under Tariff No. 7, the wholesale power rate will yield but little more than the cost of the service.  There was proof that the first wholesale power rate attacked by the Coal Company was not an increase and yielded no return, because that it merely absorbed in the body of the rate structure the coal and war clauses of the former tariff.  The Power Company justified the increase in its wholesale power rates made by the second rate attacked by producing evidence showing that the increase in rates merely covered the increase in the cost and expense of rendering the service.  It put in evidence the necessary elements for comparison and justified the rate by a scientific method and by standards and rules developed from experience and approved by general use.  The uncontradicted proof is that the net income of the Power Company for the twelve months ending May 31, 1920, available for return and other purposes, after an allowance of only 3% for depreciation on depreciable property, was $196,676, which is equivalent to a return of 7% on only $2,809,650, and a return of 4.9% on $4,000,000, the valuation fixed by the 1919 valuation.  Exhibit No. 10 introduced by the Power Company shows, for the twelve months' period ending December 31, 1919, a balance available for return and other corporate purposes of

$152,621.77, which is equivalent to an annual return of 7% on $2,180,311, or an annual return of 3.8% on a valuation of $4,000,000, testified to as the value of the used and useful property at that time. The evidence further showed that for the eight months' period ending August 31, 1920, the balance available was $173,488.14, equivalent to 7% return on $3,717,600, or 8% on $3,-352,900, or 5.8% on a valuation of $4,500,000, testified to as the value of the property at that time. In view of this evidence, we cannot hold that there is insufficient evidence to sustain the commission's order.

The appellant urges that the Power Company should have been compelled to furnish a statement of the revenue operating expenses and taxes for the years 1914 to 1919 inclusive, asserting that this data alone would have given the commission information as to whether the results of operation for the years 1918, 1919 and 1920 were less than those of prior and more normal years by reason of the increased operating expenses. The answer to this contention would seem to be that this information would have shed little or no light upon the operations of the company from the time that it took on the wholesale consumers in 1918. No service was rendered to the Coal Company under its contracts until late in the year 1918, and never at the contract rate. Appellant contends also that a valuation was a necessary and essential part of the Power Company's case, and that without going into a valuation the Power Company could not and did not prove its case. The answer to this contention may be found in the language of the Supreme Court in New Street Bridge Company v. Public Service Commission, 271 Pa. 19, as follows: "It is true, as the commission states, it is not necessary to make a valuation in every rate case; so also it is undoubtedly true a specific rate may be complained against and a just rate fixed without valuation. But there should be some reasonably scientific method which, in itself, bears some relation to fixed and operating charges and all services to justify the

conclusion. If the particular service cannot bear a profitable rate, then, to prevent confiscation, the general revenues must be considered......'Many findings as to the justness of rates have been made without basing the same on a valuation and where, as in this case, the inquiry is directed to one out of a group of rates, a valuation is not required or advisable.' But some standard must take its place—some rule developed from experience and approved by general use." The commission was not asked to make a valuation, but there was uncontradicted evidence as to the value of the Power Company's property and the capital expenditures made since the last inventory, in the light of which the commission was justified in determining the case without going into a valuation.

The order of the commission is affirmed, the costs of this appeal to be paid by plaintiff.