Equitable Gas Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued December 11, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Charles K. Robinson,* with him *Henry G. Wasson, Jr.,* and *Philip A. Fleger,* for appellant.

*Samuel Graff Miller,* with him *Vincent P. McDevitt* and *James H. Duff,* Attorney General, for Pennsylvania Public Utility Commission, appellee.

*Anne X. Alpern,* City Solicitor, with her *Leon Wald,* Assistant City Solicitor, for City of Pittsburgh, intervening appellee.

PER CURIAM, March 11, 1947:

This is a rate case. The Equitable Gas Company has appealed from the final order of the Pennsylvania Public Utility Commission entered October 29, 1945. Two proceedings before the Public Utility Commission are involved, both entered by the commission on its own motion.

On April 20, 1937, the commission, upon its own motion, filed a complaint against appellant and other gas companies doing business in Pennsylvania, alleging on information and belief that the rates of each were unjust and unreasonable (Complaint Docket No. 11380, Sub. 15). On December 11, 1944, appellant filed a new tariff to become effective February 10, 1945, providing for an increase in rates. On February 6, 1945, the commission, on its own motion, instituted an inquiry and investigation for the purpose of determining the fairness, reasonableness, and justness of the rates and charges set forth in appellant's tariff (Supplemental No. 14 to its tariff Gas Pa. PUC No. 13) (Complaint Docket No. 14038). On the same date, the commission, pursuant to the authority conferred upon it by section 308 (b), art. 3, of the Public Utility Law, May 28, 1937, P. L. 1053, 66 PS § 1148, entered an order suspending the

operation of the new tariff for a period of six months, that is, from February 10 to August 10, 1945. On July 23, 1945, the commission entered an order further suspending the operation of the new tariff from August 10, 1945, to November 10, 1945.

On July 10, 1945, the commission entered its order nisi in which it found that appellant's rates and charges in effect were just and reasonable, and that the rates and charges proposed would be unjust and unreasonable. Exceptions filed to the order nisi were dismissed by the commission, and the order nisi of July 10, 1945, was made the final order in these proceedings.

The Office of Price Administration, the City of Pittsburgh, the County of Allegheny, and Mr. C. Peyton Collins were permitted by the commission to intervene. At the argument before this court a brief was filed on behalf of the City of Pittsburgh, intervening appellee.

The commission found that the fair value of appellant's property as of December 31, 1944, for rate purposes was $31,000,000, this amount including allowable working capital of $1,193,143. The commission regarded the December 31, 1938, reproduction cost figure as the fairest representation of reproduction cost derivable from the present record, and brought that figure to December 31, 1944, to wit, $68,613,969 (not corrected for the defects of reproduction costs).

The original cost of appellant's owned and leased property was determined as of December 31, 1938, which, with additions and retirements from January 1, 1939, to December 31, 1944, resulted in $38,167,023 for original cost on the latter date. Depreciation existing and accrued as of December 31, 1944, was fixed at 44.7 per cent on an over-all basis. The reproduction cost depreciated was thus $38,044,776, and the original cost depreciated $21,184,614. The working capital allowed was $1,193,143, and the rate of return was fixed at 6½ per cent.

The issues on this appeal have been limited to three major contentions: (1) That the commission's rate base of $31,000,000 should be increased to at least $40,000,000; (2) that the commission's determination of operating results and net income on the year 1944 is unreasonable; (3) that the allowance of $535,000 for annual depreciation and depletion is unreasonable.

Appellant contends that the inadequacy of the allowance of $31,000,000 as a rate base is due to the commission's refusal (a) to make any allowance for changes in material price levels since December 31, 1938, and (b) to include natural gas leaseholds at their present value. In this connection, appellant also contends that the commission erred in refusing to give dominant and controlling weight to reproduction cost depreciated, and in failing to make a finding of, or give any weight to, trended original cost depreciated.

The burden of proof to show that the proposed rates were just and reasonable was upon the utility. *Solar Electric Co. v. Pennsylvania Public Utility Commission et al.,* 137 Pa. Superior Ct. 325, 332, 9 A. 2d 447; *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 141 Pa. Superior Ct. 5, 23, 14 A. 2d 133. Appellant complains that the commission required appellant's proofs to *clearly* support the increased rates, and that this imposed a heavier burden of proof than that required by law. We do not gather that the commission intended to place a greater burden on appellant than required. The use of the word "clearly" in the commission's phraseology was not intended to require more than what we said in *St. Clair Coal Co., Inc., v. Public Service Commission et al.,* 79 Pa. Superior Ct. 528, and *Wayne Public Safety Association v. Public Service Commission et al.,* 94 Pa. Superior Ct. 228. In the latter case we said (p. 236) : "In general terms the burden it [the utility] is required to meet is that the evidence offered be sufficient in quantity and quality to satisfy

a reasonable mind that the facts are as alleged." A reading of the commission's order indicates an adherence to this rule.

We recognize by our decisions and statutes that the rate base is fair value in this Commonwealth. *Solar Electric Co. v. Pennsylvania Public Utility Commission et al.,* supra, 137 Pa. Superior Ct. 325, 335, 336, 9 A. 2d 447; *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 475, 482, 34 A. 2d 375. Section 311, art. 3, of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS § 1151, provides that it is the fair value of the whole or any part of the property of any public utility that the commission may ascertain and fix. This section of the Act of 1937 does not define fair value, but we have said in the *Peoples* case, supra, 153 Pa. Superior Ct. 475, 488, 489, 34 A. 2d 375, that "our legislature adopted the Public Utility Law of 1937 and wrote 'fair value' into section 311 (66 PS § 1151) and that standard, minus a detailed list of the elements constituting fair value, was carried over from the Public Service Act of 1913." See section 20, art. 5, of the Public Service Company Law of July 26, 1913, P. L. 1374. In construing section 20, art. 5, of the Public Service Company Law of 1913, we said in *Beaver Valley Water Co. v. Public Service Commission,* 76 Pa. Superior Ct. 255, at page 259: "The Public Service Company Law (article V, section 20a), directs that in ascertaining and determining the fair value of a public service company's property it may [shall] take into consideration among other things (1) the original cost of construction; (2) the amount in market value of its bonds and stocks; (3) the probable earning capacity under the rates fixed by the commission; (4) expenditures for obsolete equipment and construction,— (as warranted, in connection with (2), (3) and (4), by the circumstances and historical development of the enterprise)—; (5) reproduction costs of the property, based upon the fair average price of materials, property and labor; (6)

developmental and going concern value—all of which, together with any other elements of value, are to be given such weight as may be just and right in each case."

In the *Solar* case, supra, 137 Pa. Superior Ct. 325, at page 336, 9 A. 2d 447, at page 457, we said: "While the new act (Public Utility Law) does not go into details as to the items which should be considered by the commission in fixing the fair value of a utility's property, as fully as the old act (Public Service Company Law) did, this was not because of any intention to change the law in this respect, but because the decisions of the United States Supreme Court and of our Supreme Court had definitely settled the principles to be applied by the commission in arriving at such fair value, and they did not require elaboration in the statute."

In *Pittsburgh et al. v. Pennsylvania Public Utility Commission*, 158 Pa. Superior Ct. 229, at page 236, 44 A. 2d 614, at page 617, we also said: "Solar Electric Co. v. P. U. C., supra, (137 Pa. Superior Ct. 325, 9 A. 2d 447) is the present rate-making law of this State. . . . It was our intention in the prior appeal (153 Pa. Superior Ct. 475) not to modify the general principles of the Solar case, but to apply the law to the facts of this particular proceeding." The Public Service Company Law of 1913 provided for consideration, in determining fair value, of "the original cost of construction"; and in *Los Angeles Gas and Electric Corp. v. Railroad Commission of California* (1933), 289 U. S. 287, 53 S. Ct. 637, 77 L. Ed. 1180, 1193, Mr. Chief Justice HUGHES said: "The actual cost of the property—the investment the owners have made—is a relevant fact. Smyth v. Ames, 169 U. S. 466, 547, 42 L. Ed. 819, 849, 18 S. Ct. 418."

We think it quite obviously follows from what has been said that the commission is not bound by any formula, but shall consider all elements of value and all facts which have a relevant bearing on fair value. Reproduction cost, original cost, and all other elements

affecting value are to be given their proper weight in the final conclusion. See *Federal Power Commission v. Natural Gas Pipeline Co.*, 315 U. S. 575, 62 S. Ct. 736, 86 L. Ed. 1037, 1049, 1050, where it was said by Mr. Justice STONE: "The Constitution does not bind rate-making bodies to the service of any single formula or combination of formulas. Agencies to whom this legislation power has been delegated are free, within the ambit of their statutory authority, to make the pragmatic adjustments which may be called for by particular circumstances. Once a fair hearing has been given, proper findings made and other statutory requirements satisfied, the courts cannot intervene in the absence of a clear showing that the limits of due process have been overstepped."

Reproduction cost, notwithstanding its manifest defects, is recognized in this Commonwealth as an element to be considered in the determination of fair value. But it is not necessarily to be given controlling weight by the commission, as appellant argues. Reproduction cost depreciated is not identical with, or equivalent to, present value (*Bangor Water Co. v. Public Service Commission*, 82 Pa. Superior Ct. 48) ; in considering this element, as well as any other element or fact, the commission shall exercise "an intelligent and discriminating judgment." *Peoples* case, supra, 153 Pa. Superior Ct. 475, 483, 34 A. 2d 375. Appellant's suggested minimum rate base figure of $40,000,000 represents the rounded total of reproduction cost depreciated and working capital with no consideration whatever for original cost depreciated or any other relevant value factor. In other words, if we accept appellant's claimed rate base figure, the commission will be bound to a rate base determined exclusively upon reproduction cost depreciated as estimated by appellant. The commission gave the reproduction cost estimate adequate consideration, and properly concluded that it was not entitled to conclusive weight.

The commission in its order pointed out the defects in the estimate, and the determination of fair value exclusively upon such estimate would not have indicated the exercise of an intelligent and discriminating judgment. See *Minnesota Rate Cases* (*Simpson v. Shepard*), 230 U. S. 352, 434, 33 S. Ct. 729, 57 L. Ed. 1511, 1556. It is sufficient to note that the reproduction cost estimates were based upon spot prices. Article 5, § 20, of the Public Service Company Law of 1913 (repealed), referred to reproduction cost of the property based upon the fair average price of materials, property, and labor. In cases involving reproduction cost estimates a five or ten year average has been generally used. The commission therefore concluded that the spot pricing of December 31, 1938, produced a figure fairly comparable to a reproduction estimate based on average prices over any reasonable number of recent normal years.

Appellant's complaint with respect to the figures used by the commission for reproduction cost new and reproduction cost depreciated arises because of the commission's refusal (a) to make any allowance whatsoever for changes in price levels between December 31, 1938, and December 31, 1944, and (b) to include the natural gas leaseholds at their present value. Appellant urges that the estimates be increased by allowing an increase in price levels between December 31, 1938, and December 31, 1944, of 9½ per cent which would add $3,600,000 to the depreciated reproduction cost figure. Secondly, the appellant asserts that the commission erred in not allowing natural gas leaseholds at their present value and thereby adding to the estimates of depreciated reproduction costs the further item of $1,650,000, thus making, according to appellant, the correct estimate of reproduction cost depreciated as of December 31, 1944, $43,250,000.

It would be futile to attempt to determine fairly reproduction cost in an abnormal price situation.[1]

---

[1] "The determination of present value is not an end in itself. Its purpose is to afford ground for prediction as to the future. It is to

Reproduction cost under ordinary circumstances and reasonably stable prices is a theoretical value based upon uncertain and fugitive data. [2] But the commission is not obliged to accept such estimates which would increase such theoretical value where the economic conditions are uncertain and unstable. Such weight as the estimate may have depends largely upon the stability of the price level over a period of years. We do not believe that under any theory appellant is entitled to a finding of reproduction cost new or depreciated reflecting highly inflationary prices which are probably of temporary duration.

Appellant relies upon what this court has previously said to sustain its position that the case must be remanded to the commission for further consideration due to the fact that there has been substantial increase in price levels since December 31, 1938, and that the commission refused to give any consideration whatsoever to this change. In *Pittsburgh et al. v. Pennsylvania Public Utility Commission,* supra, 158 Pa. Superior Ct. 229, at page 238, 44 A. 2d 614, at page 618, we did say: "But the rate base cannot be determined solely from that finding [depreciated original cost] because it is conceded, as it must be, that there have been changes in price levels and no adjustments were made by the commission to reflect price trends disclosing fair value as of the applicable date. Peoples Nat. Gas Co. v. Pa. P. U. C., supra (153 Pa. Superior Ct. 475, 484)." In the *Pittsburgh* case we held that the rate base could not be determined solely on a finding of original cost depreciated. In the present case the rate base has not been determined only on original cost depreciated. It is

make possible an 'intelligent forecast of probable future values' in order that the validity of rates for the future may be determined": *Los Angeles Gas and Electric Corp. v. Railroad Commission of California,* 289 U. S. 287, 311, 53 S. Ct. 637, 77 L. Ed. 1180, 1195, 1196.

[2] See *West v. Chesapeake & Potomac Tel. Co.,* 295 U. S. 662, 689, 55 S. Ct. 894, 79 L. Ed. 1640, 1656 (dissent by Mr. Justice STONE, later Chief Justice).

one element of fair value, but it cannot be used as a substitute therefor. The commission refused, after consideration, to accept the changes in price levels since December 31, 1938, in determining reproduction cost as presented by appellant in view of their abnormal and inflationary aspects. See *Peoples* case, supra, 153 Pa. Superior Ct. 475, 484, 34 A. 2d 375. Consequently, it took the reproduction cost estimate of December 31, 1938, as the fairest representation of reproduction cost which could be derived from the present record and adjusted that amount to December 31, 1944. We find no error of law committed by the commission in this respect. The testimony presented by appellant relative to changes in price levels between 1938 and 1944 was neither conclusive nor convincing, and was not binding upon the commission or upon this court. The commission is not required to accept, and base its decision as to value or anything else upon, conjectural and unsatisfactory estimates. *Railroad Commission of the State of California v. Pacific Gas & Electric Co.*, 302 U. S. 388, 397, 58 S. Ct. 334, 82 L. Ed. 319, 325.

Appellant also complains that the commission did not find any figure for trended original cost either new or depreciated. Trended original cost as of December 31, 1944, is claimed by appellant as $75,941,923, which was depreciated to $42,074,133. This latter figure exceeds the commission's finding of reproduction cost depreciated. As the commission had at least two elements for consideration in the determination of fair value, original cost depreciated and reproduction cost depreciated, it was not obliged on this record to make a finding as to trended original cost depreciated. The finding of fair value was not arbitrary; it was not made without sufficient evidence. The argument that original cost should be given no weight whatsoever unless it is trended is not convincing, and is not in harmony with previous decisions and statutory enactments. See *Beaver Valley Water Co. v. Public Service Commission,*

76 Pa. Superior Ct. 255; *Highspire Water Co. v. Public Service Commission,* 76 Pa. Superior Ct. 504; *Borough of Lewistown v. Public Service Commission,* 80 Pa. Superior Ct. 528; *New Street Bridge Co. v. Public Service Commission et al.,* 271 Pa. 19, 38, 114 A. 378; *Solar Electric Co. v. Pennsylvania Public Utility Commission et al.,* supra, 137 Pa. Superior Ct. 325, 9 A. 2d 447; *Smyth v. Ames,* 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819, 849; *Los Angeles Gas and Electric Corp. v. Railroad Commission of California,* 289 U. S. 287, 53 S. Ct. 637, 77 L. Ed. 1180, 1193; section 20, art. 5, Public Service Company Law of July 26, 1913, P. L. 1374 (repealed). If the commission is required to consider original cost only if trended, then a finding of fair value of appellant's property would undoubtedly have to equal or exceed reproduction cost depreciated. As present fair value would ordinarily exceed original cost depreciated, we have said that it cannot be the only element in the determination of fair value. Original cost trended would, if depreciated, approximate a value equal to reproduction cost depreciated. Appellant would have original cost used as an element in fixing fair value only when it represents or is adjusted to represent the present cost of construction. The commission is not circumscribed by such a requirement in exercising a reasonable judgment in the determination of fair value of any utility.

The commission used the original cost of leaseholds. Appellant had recognized this element in its various reproduction cost estimates, and even in its trended original cost estimate of December 31, 1938, leaseholds were included at original cost. It was only on the hearing of April 18, 1945, relating to increased rates that appellant presented evidence relating to the alleged present value of its natural gas leaseholds. The commission submits that the value evidence presented by the witnesses Wolf and Shields was unreliable, and was therefore rejected by the commission. The evidence presented by these witnesses seems to be without pro-

bative value and consists of guesses which the commission was not obliged to accept and incorporate in the estimates upon which a rate base was to be predicated.

The commission selected the 1944 figures of appellant as the best indication of future operating results. The commission assumed that the results of operation of 1944 gave an accurate picture of the present and an indication of the future. Appellant contends that the commission should have given primary consideration to the results of the prewar years 1939 to 1941, inclusive, and that controlling consideration should have been given to the five years of 1939 to 1943, inclusive. The commission's acceptance of the 1944 operating and expense experience is unobjectionable as a reasonable guide to the future, while appellant's argument as to the operating results in the future is merely prophecy which may never be fulfilled. The results for periods subsequent to 1944 demonstrate the soundness of the commission's position. Supplementary data furnished by appellant indicates that the adjusted net income for the year 1945 is $34,281.94 higher than the comparable figure for the year used by the commission to forecast the year 1945. Also that the adjusted net income for the 12-month period ending September 30, 1945, was $70,-155.60 greater than the 1944 figure. The 12-month period which ended September 30, 1946, shows $180,417.95 deviation from the figure for 1944. However, the average deviation from the 1944 figure is only $22,272.29. As stated by the commission in its final order, if future revenues and expenses indicate a justification for increased rates, there is nothing to prevent appellant from submitting such rates for consideration by the commission in the light of conditions existing at the time of filing.

Appellant's operating revenues for 1944 were $14,-585,077. Its operating expense for that year, including retirement reserve appropriations of $1,060,693 totaled $12,954,261, leaving an operating income of $1,630,816.

The commission reduced appellant's expense for depreciation to $535,000. After the revision of annual depreciation there resulted an operating income of $2,156,509 which, under existing rates, would be in excess of the allowed return of $2,015,000. It is appellant's contention that the allowance by the commission of an annual depreciation of $535,000 is grossly inadequate. Appellant taking a fair value new figure of approximately $70,000,000 (using a rate base of $40,000,000 less working capital of $1,200,000) would apply 2.2 per cent making $1,540,00 as an annual appropriation for depreciation reserves for rate-making purposes.

We believe that there is no requirement, constitutional or otherwise, that an owner who embarks in a wasting-asset business of limited life shall receive at the end more than he has put into it. *Federal Power Commission v. Natural Gas Pipeline Co.*, 315 U. S. 575, 593, 62 S. Ct. 736, 86 L. Ed. 1037. An annual depreciation allowance cannot logically or consistently be based upon fair value or reproduction cost, but rather the basis for computation should be upon the book cost of depreciable and depletable property. See *Federal Power Commission v. Hope Natural Gas Co.*, 320 U. S. 591, 606, 64 S. Ct. 281, 88 L. Ed. 333, 347; *Federal Power Commission v. Natural Gas Pipeline Co.*, supra, 315 U. S. 575, 593, 594, 62 S. Ct. 736, 86 L. Ed. 1037, 1053, 1054; *Lindheimer v. Illinois Bell Telephone Co.*, 292 U. S. 151, 167, 169, 54 S. Ct. 658, 78 L. Ed. 1182, 1192, 1193. See, also, *Detroit Edison Co. v. Commissioner of Internal Revenue*, 319 U. S. 98, 63 S. Ct. 902, 87 L. Ed. 1286. To make an allowance in excess of cost would be to allow an additional profit over and above a fair return. The commission, in coming to its conclusion, said in its order nisi: "Taking into account respondent's investment in its plant, the extent to which that plant has already depreciated, the number of years it will probably remain in service based on respondent's own testimony, and the various other relevant facts of record, we find that

the allowable annual depreciation expense is $535,000." The commission points out that: "At the end of 1938, when composite age was about 26 years, the capital outlay was about $13,497,777 in excess of book depreciation reserve with the corresponding composite remaining life of about 33½ years, indicating a necessary annual provision of about $403,000 per year. At the end of 1944, when the corresponding composite age was about 27 years due to additions and retirements, the capital outlay was about $12,480,470 in excess of book depreciation reserve with a corresponding composite remaining life of about 32½ years, indicating a necessary annual provision of about $384,000 per year." Appellant's contention is that the fair value new must be used as the proper basis to determine the annual allowance for depreciation and depletion, and that an annual percentage of 2.2 per cent developed for a reproduction cost base should apply. As we have stated, fair value is not the basis for the determination of an annual allowance for depreciation and depletion. [3] The commission, in its brief, explains that it also calculated from the record an annual depreciation of 1.66 per cent on original cost basis, and that applying this percentage to $31,935,816, adjusted book cost of appellant's capital outlay as of December 31, 1944, would give $530,135 for an annual charge, and $593,569 on an original cost as of December 31, 1938, including land and land rights. The commission might have been more explicit in its order as to the methods used in calculating annual depreciation, and a further discussion there would have clarified its finding. [4] But the ultimate result of appel-

[3] Appellant's witness Maurice R. Scharff testified that a fair value figure or a rate base figure could not be used as a basis for an annual depreciation charge. (326a, 327a, 505a)

[4] The commission in its brief said: "By dividing the accrued depreciation percentage for each account [reproduction cost new, 799a] by the composite or weighted average age of the account [903a], the commission staff obtained the corresponding percent for annual de-

lant's theory and method would be an annual depreciation allowance which would provide for both the retirements experienced in each succeeding year and also for an accrued balance 35 years hence equal to the amount of the present property less the present accrued depreciation. (Appellant states that it has been estimated that the remaining life of the natural gas supply in the Appalachian field will be about 35 years.) The allowance for depreciation of $535,000 per year would seem to provide for retirement of the present property of appellant whether retirements accrue in annual increments or occur in a total amount during or at the end of a period 33½ years or more hence. [5] We think the allowance substantially provides for all factors related to depreciable and depletable property. Appellant "cannot get its capital back at the expense of the consuming public and also at the same expense provide itself with a fresh supply to keep the business going": *Columbus Gas & Fuel Co. v. Public Utilities Commission of Ohio,* 292 U. S. 398, 407, 54 S. Ct. 763, 78 L. Ed. 1327, 1333.

Appellant was not denied due process of law. The evidence which appellant offered was received and considered. Its credibility and weight were determined by the commission. The commission placed a valuation upon appellant's property, and the rates are properly related to that valuation and are not confiscatory. We also find that the result of the commission's order is a fair return on a fair value. The average annual net income after depreciation but before federal income taxes

---

preciation on a directly related basis," and substituting the original cost by accounts for the reproduction cost and following the same procedure the commission staff reached similar results on the original cost basis for a figure of 1.66% for annual depreciation as of December 31, 1938, and that the same rate would be applicable at December 31, 1944.

[5] In *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 475, 34 A. 2d 375, the commission allowed $600,000 for annual depreciation. The company's contention was that the allowance should have been about $1,300,000. We found no reversible error in the commission's $600,000 allowance.

for the years 1939-1943, inclusive, was $1,355,321.53. The commission has now allowed $2,504,148 before federal income taxes. It is difficult to give any satisfactory reason for allowing appellant increased rates at the present time. At least we find no legal error in the commission's' action; and counsel for appellant, at the argument, asserted that the only questions to be presented were legal and not factual. In our judgment, a rate base of $31,000,000, a rate of return of 6½ per cent, and a net annual return of $2,015,000 have been fixed without any reversible error on the part of the commission. Moreover, the end result is obviously most generous to appellant in comparison with its actual past experiences. The commission has permitted net annual revenues of almost $1,150,000 in excess of the average net earnings for the immediately preceding several years. Nevertheless, appellant would raise the rate base to at least $40,000,000 and increase its rates to produce an annual net of at least $2,600,000, after federal income taxes, while asserting that the high level of industrial operation prevailing in 1944 is not likely to be realized again in the immediate or foreseeable future. In *West v. Chesapeake & Potomac Telephone Co.,* supra, 295 U. S. 662, 673, 55 S. Ct. 894, 79 L. Ed. 1640, 1648, the Supreme Court, in an opinion by Mr. Justice ROBERTS, made this pertinent statement: "A public service corporation ought not . . . in a rate proceeding, to be permitted to claim to the last dollar an increased value consequent upon a sudden and precipitate rise in spot prices of material or labor. No more ought the value attributable to its property to be depressed by a similar sudden decline in the price level." In no year except 1923, in the 22 years immediately prior to the filing of the increased rates, had appellant earned, before federal income taxes, an amount greater than that permitted by the commission's order. See *Dayton Power & Light Co. v. Public Utilities Commission of Ohio,* 292 U. S. 290, 311, 312, 54 S. Ct. 647, 78 L. Ed. 1267, 1281, 1282.

We are of the opinion that the rates fixed by the commission's order are not confiscatory; and, after giving full weight to appellant's arguments, we are not persuaded that the commission has committed any such error as would require a reversal of its order. If adverse and substantial changes in revenues and expenditures eventually occur, appellant may, as the commission suggests, apply for a rate adjustment.

Appeal is dismissed at the cost of appellant.