# Citizens Water Company, Appellant, *v.* Pennsylvania Public Utility Commission.

302

Argued April 13, 1956. Before Rhodes, P. J., Hirt, Gunther, Wright, Woodside, Ervin, and Carr, JJ.

*Norman T. Hayes, Jr.,* with him *Ernest R. Von Starck* and *Morgan, Lewis & Bockius,* for appellant.

*Albert E. Luttrell,* Assistant Counsel, with him *William A. Donaher,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission.

*Alexander R. Curran,* for City of Washington, intervening appellee.

OPINION BY RHODES, P. J., July 17, 1956:

The Citizens Water Company has appealed from the order of the Public Utility Commission in this rate proceeding, and questions the commission's finding of fair value of the company's land.

The Citizens Water Company serves certain areas in Washington County. On January 14, 1955, it filed a new tariff, effective March 15, 1955, providing for an estimated increase in annual revenues of $404,721. The proposed increase was approximately 65.5 per cent more than the existing revenues at the level of operations at October 31, 1954. The total annual revenue to be yielded by the new tariff was $1,022,690. On March 7, 1955, the commission suspended the operation of the tariff for a period of six months, and by concurrent order, on its own motion, instituted an investigation for the purpose of determining the reasonableness and lawfulness of the rates, charges, rules, and regulations in the proposed tariff. By subsequent order the operation of the proposed tariff was further suspended to December 15, 1955. The City of Washington and the Borough of Canonsburg filed complaints against the rates in the new tariff, alleging that the proposed rates were unreasonable and unnecessary for the proper and sound operation of the company. The complaints were consolidated with the commission's proceeding for the purpose of hearing. The commission, one commissioner dissenting, finally determined that the company was entitled to operating revenues of $923,925, or an increase of approximately 49 per cent compared with 65.5 per cent which the company had requested; and the company was ordered to file a new tariff containing rates designed

to produce the allowed annual operating revenues at the level of operations at October 31, 1954.

The sole complaint of the company on this appeal is to the determination of the value of its land for rate making purposes; and it contends that the commission erred in limiting the valuation to original cost.

The commission found the fair value of the company's property, used and useful in the public service, to be $6,750,000. In several measures of value the land was included at original cost of $326,857 for the company's 1,431 acres. The company apparently submitted seven measures of value of its October 31, 1954, plant, five of which included land at original cost, and two of which included land at current and five-year average appraisals.

In the first instance the company sought to have its land included in the rate base at original cost. During the rate proceeding the company submitted appraisals of its land at price levels of October 31, 1954, and October 31, 1949. These were about three times original cost. The company has a number of tracts of varying acreage. Most of the acreage is watershed and reservoir; a small amount is improved with buildings and pumping equipment. In support of the appraisals, three real estate brokers testified as witnesses for the company. They valued the bare land as of October 31, 1954, at $1,177,672, and as of October 31, 1949, at $983,646. The mathematical five-year average would be $1,080,659. A witness for the complaining municipalities testified that the market value of 1,105 acres of the company's land was $209,779, which is below original cost of those tracts of $266.096 as well as the company's present-day appraisal of $906,418.

The commission rejected the appraisals submitted by the company and the complainants, and concluded

that the company's original cost of $326,857 for its 1,431 acres of land was its fair value for rate making purposes on the record before it.

It is argued on behalf of the company that the commission erred in failing to properly consider the opinion evidence with respect to the market value of its land, and in determining that the original cost was the fair value of such real estate for rate making purposes. The vacation of the commission's order and remission of the record for the reasons submitted by the company would necessarily require the commission to allow an increase in the rate base and in the allowable return at the rate of 5.7 per cent, and to make other necessary adjustments.

A public utility in this Commonwealth is entitled to receive a fair return on the fair value of its property used and useful in the public service at the time rates are established or at the time value is in issue. *Pennsylvania Power & Light Co. v. Public Service Commission*, 128 Pa. Superior Ct. 195, 212, 193 A. 427; *Solar Electric Co. v. Pennsylvania Public Utility Commission*, 137 Pa. Superior Ct. 325, 335, 388, 9 A. 2d 447; *Equitable Gas Co. v. Pennsylvania Public Utility Commission*, 160 Pa. Superior Ct. 458, 473, 51 A. 2d 497; *Philadelphia v. Pennsylvania Public Utility Commission*, 173 Pa. Superior Ct. 38, 52, 95 A. 2d 244; *Pittsburgh v. Pennsylvania Public Utility Commission*, 370 Pa. 305, 309, 88 A. 2d 59. See sections 301, 311 of the Public Utility Law of 1937, P. L. 1053, as amended, 66 PS §§1141, 1151. In ordinary rate proceedings the commission in finding fair value of a utility's property for rate making purposes usually has before it as measures of value original cost and reproduction cost based upon the fair average price of materials, labor, and property. In determining the valuation of land there is no reproduction cost in the

ordinary sense; however, there may be an increase from time to time in market value. Obviously it is more difficult to ascertain the changing value of land than of other property, as such valuation rests largely on opinion evidence. The reproduction cost of other property such as buildings and machinery can be readily and reasonably determined from the fair average price of material and labor prevailing from time to time. However, in the determination of the value of any property, real or personal, included in the rate base the commission is not bound by any formula. *City of Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 187, 195, 90 A. 2d 607. After giving consideration to any relevant facts, it is within the province of the commission to determine the weight to be given the evidence, the reliability of the estimates and the opinions, and the credibility of the witnesses. Unless there is a lack of support for it in the evidence or it is the result of an abuse of discretion or of capricious action, the commission's resolution of these matters will not be disturbed. *Pittsburgh v. Pennsylvania Public Utility Commission,* 174 Pa. Superior Ct. 224, 230, 101 A. 2d 127; *Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 370 Pa. 305, 315, 88 A. 2d 59.

The commission is charged with the duty of protecting the rights of the public, and there is nothing in the law that compels it to accept a company's valuation of property for rate making purposes which is unrealistic and merely hypothetical. With reference to the appraisals by the company's witnesses, the commission said: "The fact that adjacent land, which has been laid out in relatively small real estate plots, is bringing a high price is no proof that respondent could dispose of its large holdings on a wholesale basis at similar prices."

A brief review of the testimony of the company's witnesses justifies the conclusion that the company's 1,431 acres have no such present market value as given by the appraisals. Its assumed use for residential or commercial purposes is pure conjecture. The witnesses were furnished a list of the parcels of real estate owned by the company together with maps showing locations, sizes, and descriptions, and other information with respect to each parcel. Being thus prepared they proceeded to fix by their opinions the fair market value as of October 31, 1954, and October 31, 1949. They testified that they determined the fair market value of the "bare land without giving consideration to any improvements or structures including reservoirs now on the property." They said they considered the effect of public improvements and the shape, size, and location of each parcel, and stated that they took into account "all available uses and purposes" to which the land might be adapted. They gave no consideration to the fact that the land has a specific value to a water company. But they considered sales and offerings of residential property in the areas. They then described how they reached the appraised amounts (company's exhibit No. 26) by using representative parcels in the exhibit which included all of the land. For instance, they considered the proximity of a tract to the City of Washington, to schools, to bus transportation, to an attractive neighborhood, to a highway, and in general all factors desirable in connection with the development of home sites. They appraised at $900 per acre a 300-acre tract because they considered the land suitable for a housing development. Another 5-acre tract, which had a frontage on a highway, they valued at $3,500 per acre, because in their opinion the property was suitable for both residential and commercial purposes. Another small tract was appraised at $2,-

500 per acre for the same reason. One of the tracts containing 112 acres was valued at $500 per acre. The witnesses described the beautiful and valuable homes in the vicinity, and noted that adjoining this tract were subdivisions under development. On cross-examination it appeared that the witnesses had given little or no consideration to the fact that some of the land was wooded, although they did express an opinion that this might make the land more desirable for home sites. In placing a value upon the reservoir properties the witnesses did not take into consideration the fact that the land was under water, but appraised it "just as though there were no water there." Furthermore, the witnesses attempted to minimize adjoining areas which were still farm land and possibly available for development, and at the same time emphasized those parcels which had been built up residentially.

Our appellate courts have said that a proper determination of the present value of land requires a consideration of its present market value not for any particular purpose but for all its available uses and purposes. *Lehighton Water Supply Co. v. Public Service Commission,* 99 Pa. Superior Ct. 574, 580; *Erie City v. Public Service Commission,* 278 Pa. 512, 528, 123 A. 471. In *Scranton-Spring Brook Water Service Co. v. Public Service Commission,* 119 Pa. Superior Ct. 117, 133, 181 A. 77, we pointed out that the peculiar value or special adaptation which land may have for water supply purposes, although not controlling, may be given consideration. Present fair market value of land does not mean inflated estimates for any particular use. In referring to reproduction cost as a measure of value, we have said that the use of high or low prices over a given period should be avoided as the ultimate objective is "to arrive at a valuation that is fair to all interests, both to the utility

and to the consumer or customer." *City of Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 171 Pa. Superior Ct. 187, 197, 90 A. 2d 607, 613. In appraising the company's land its witnesses could not consider only what the land might be worth eventually for home sites or any other special purpose. Although increase in value over original cost of land may be a matter for consideration in a rate proceeding when properly established, it would be impractical to accept a valuation so great as to render rates based upon that valuation unjust from the standpoint of the public. *City of Scranton v. Public Service Commission,* 80 Pa. Superior Ct. 549, 560. Apparently the opinions of the company's witnesses as to present market value were based almost entirely upon the possible eventual use of the land for residential purposes. The appraisers gave no consideration to the land as watershed, and they ignored entirely the fact that parts were under water. Actually they gave to the land a theoretical value by considering it under most ideal conditions.

The commission was not required to accept such hypothetical, conjectural, and unsatisfactory estimates in determining the fair value of this property of the company for rate making purposes. *Pittsburgh v. Pennsylvania Public Utility Commission,* 172 Pa. Superior Ct. 230, 235, 93 A. 2d 715; *Railroad Commission of California v. Pacific Gas & Electric Co.,* 302 U. S. 388, 397, 58 S. Ct. 334, 82 L. Ed. 319, 325.

We are of the opinion that it was not an unreasonable exercise of judgment under the circumstances for the commission to reject the high valuations placed by the company's appraisers on its land. For the same reason that a utility is not entitled to have fair value of its property determined solely on the basis of the particular use made of the property (*The Minnesota*

*Rate Cases,* 230 U. S. 352, 451, 33 S. Ct. 729, 57 L. Ed. 1511, 1562; *Lehighton's Water Supply Co. v. Public Service Commission,* supra, 99 Pa. Superior Ct. 574, 580), a utility may not have such value determined on the basis of a theoretical market price which the land might eventually bring for another purpose such as a housing development. *Scranton-Spring Brook Water Service Co. v. Public Service Commission,* supra, 119 Pa. Superior Ct. 117, 134, 181 A. 77; *City of Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 171 Pa. Superior Ct. 187, 198, 199, 90 A. 2d 607.

The burden was upon the company to establish the fair value of its property and the reasonableness of its rates. *Philadelphia v. Pennsylvania Public Utility Commission,* supra, 173 Pa. Superior Ct. 38, 48, 95 A. 2d 244; *Equitable Gas Co. v. Pennsylvania Public Utility Commission,* supra, 160 Pa. Superior Ct. 458, 462, 51 A. 2d 497; section 312, Public Utility Law of 1937, P. L. 1053, 66 PS §1152. In addition to original cost of its land, the company produced nothing more than the opinion evidence of its possible value for eventual residential purposes. "Of all forms of evidence, opinion evidence is the weakest and least reliable. Even though uncontradicted it need not be accepted." *Blue Mountain Telephone & Telegraph Co. v. Pennsylvania Public Utility Commission,* 165 Pa. Superior Ct. 320, 326, 67 A. 2d 441, 444. Where, as here, the opinions were based on an erroneous assumption that fair value of the land was the equivalent of a theoretical value for a particular use, that is, as residential property, such opinions carry little weight. We cannot agree with the contention of the company that the commission did not give any consideration to this evidence. On the contrary, the commission upon giving it full consideration found it wholly unsatisfactory and un-

reliable as a measure of value of the company's land. The only remaining competent and reliable evidence of value of the land was that of original cost. Original cost is not necessarily synonymous with present fair value for rate making purposes. *City of Pittsburgh v. Pennsylvania Public Utility Commission*, supra, 171 Pa. Superior Ct. 187, 195, 90 A. 2d 607. But on the record before us it is the only good evidence which the company, having the burden of proof, produced in support of this portion of its claimed rate base. The witness for the complaining municipalities testified that the present value of most of the company's land was even lower than its original cost. The commission also considered and properly rejected the testimony of this witness.

It is to be noted that the commission allowed an increase of approximately 49 per cent in the annual allowable revenues of the company. This compares favorably with the requested increase of 65.5 per cent. The company does not assert that the new rates are inadequate or that they are confiscatory. It would seem that the company, under the circumstances, has no ground for complaint.

The order of the commission is affirmed.